**SAN MARTINE COMPANIA DE NAVE-GACION, S.A., Appellant,**

v.

**SAGUENAY TERMINALS LIMITED,**
Appellee.

No. 16666.

United States Court of Appeals
Ninth Circuit.

Aug. 2, 1961.

Dorr, Cooper & Hays and John Hays and W. K. Mordock, Jr., San Francisco, Cal., Chadbourne, O'Neill & Thomaon and John B. Whalen, New York City, Ander-

son, Wrenn & Jenks and Martin Anderson, Honolulu, Hawaii, for appellant.

Lillick, Geary, Wheat, Adams & Charles and Gilbert C. Wheat and Willard G. Gilson, San Francisco, Cal., and Haight, Gardner, Poor & Havens and William J. Junkerman, New York City, for appellee.

Before CHAMBERS, POPE and JERTBERG, Circuit Judges.

POPE, Circuit Judge.

In July, 1955, the appellee, here called Saguenay, as charterer, chartered the vessel Santa Ana from the appellant San Martine, owners, for portions of each of four ensuing years. The ship was operated under the charter until the owners, by notice dated November 9, 1956, invoked the clause of the charter party which provided that in the event that Canada, the United Kingdom, or the United States, became involved in hostilmercantile marine by any of those ities leading to the requisition of their countries, the owners and the charterers should have the right to cancel the charter upon completion of the voyage upon which she was actually engaged. In serving a notice upon Saguenay, the owners relied upon the Suez Canal attack which commenced in October, 1956, as the hostilities which gave rise to the right to cancel.

Saguenay requested withdrawal of the notice; that however, was refused. It obtained a replacement for the vessel from others at a higher charter rate and brought suit against San Martine in the court below alleging breach of charter and seeking recovery of damages for the claimed ensuing loss. The Santa Ana was seized to obtain security for the damage claimed.

San Martine then invoked clause 17 of the charter party which provided for arbitration;[1] and the district court suspended the action and ordered the parties to proceed to arbitration..

During these proceedings, in order to induce the district court to set a low bond for the release of the Santa Ana, San Martine offered to tender the Santa Ana or another vessel to Saguenay. Another vessel, The Linda, was thus tendered and accepted for the 1957 period, and Saguenay paid hire therefor at the charter party rate.

The following year, an offer of tender of another vessel for the 1958 period was refused by Saguenay. The district court refused to instruct it to accept a vessel for this period, refused to exonerate the bond, and directed the parties to proceed with the arbitration.

This order was made April 11, 1958. Thereafter, under date of July 3, 1958, the parties made a supplemental arbitration agreement and thereafter arbitration proceeded under the order of the court and under this supplemental agreement. That agreement recited at considerable length in sundry "whereas" clauses various transactions between the parties up to that date: the execution of the charter party; its general provisions; the commencement of performance; the giving of the notice to cancel the charter; the dispute between the parties relating to notice; the invoking of the arbitration clause; the institution of libel against the owners with foreign attachment against the Santa Ana in the United States District Court for the District of Hawaii; the fixing of bond; the order to proceed to arbitration; the appointment of the arbitrators; the tender and use of "The Linda" in 1957; a recital that the parties disagreed as to the basis of such tender and as to its legal consequences; the reactivation of the district court proceedings; the direction of the court to proceed with ar-

1. "17: That should any dispute arise between owners and the Charterers, the matter in dispute shall be referred to three persons at Montreal, Que., one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them shall be final, and for the purpose of enforcing any award, this agreement may be made a rule of the court. The arbitrators shall be commercial men."

bitration; the dispute over the tender of another vessel for the 1958 period, and then proceeded as follows:

"Whereas, the parties are willing and desirous that all disputes between them arising out of all matters and events related above be decided by the arbitrators;

"Now, Therefore, the parties hereto mutually covenant and agree for themselves, their successors and assigns, as follows:

"1. The parties hereto submit to Messrs. Pattington, Boyle and Rees at Montreal, Quebec, all disputes between them arising out of the notice of November 9th, 1956, and all claims which they assert against each other as a result of such notice and of the actions and positions which they respectively took thereafter and do further agree that the decision and awards of said arbitrators or of any two of them shall be final and that such decision and awards shall be made an order of the United States District Court for the District of Hawaii.

"2. Any amount or amounts payable under the terms of such order shall be paid in currency of the United States of America within fifteen days from the date of such order with interest at the rate of five per centum (5%) per annum from such date or dates as may be fixed by the decision and awards of the arbitrators. Failing payment within such delay, the party entitled to receive payment under the terms of such order shall have the right to apply to any Court having jurisdiction over the other party or its assets to enforce such order.

"3. The arbitration shall be divided into two parts. The first part shall deal with the dispute as to the rights of the Owners in the light of the circumstances then existing to give their notice of November 9,

1956, and the second part shall deal with all other matters including such damages, if any, recoverable by the parties or either of them as a result of the giving of such notice and of their actions thereafter."

The first part of the decision or award of the arbitrators was to the effect that San Martine was within its rights in cancelling the charter by its notice of cancellation. This portion of the award is not disputed or involved in this suit; —what is involved is the ruling of the arbitrators with respect to the second part of the arbitration.

In this part the arbitrators ruled "that Saguenay should pay to the owners * * * the sum of $26,360, being the profit that Saguenay admit having made on the operation of the S/S 'Linda' during the 1957 season." The arbitrators also held that the owners were entitled to compensation "for the loss of time to their ship and expenses in connection with the detention at Hawaii amounting to $30,984.52, details of which are stated in our statement No. 1 attached hereto."

The statement referred to itemized losses for detention at Honolulu for nine days; expenses incident thereto; running expenses; fuel consumed, and miscellaneous out of pocket expenses, all totaling the sum previously mentioned.

The determination respecting the right of San Martine to give the notice was confirmed by the court without contest, but upon motion of Saguenay the other items of the award, namely, the damages of $26,360, and the item of $30,-984.52, were ordered deleted from the award and the award was modified accordingly. The motion which this order granted was based "upon the ground and for the reason that said items of award are not in accordance with law and beyond the scope of the arbitrators' authority." The order found the objections well taken; that the arbitrators in the respects mentioned "exceeded their jurisdiction and that the award of damages

in the above amount was beyond the scope of the arbitrators' authority." [2]

Upon this appeal, in which appellant assigns error in the court's modification of the arbitrators' award, it may be assumed that the reasons for the trial court's action in this respect were substantially the same as those now presented by the appellee in support of the trial court's decision. Presumably the same argument was made in the court below.

Appellee's argument in support of the action of the trial court is substantially this: The appellee, Saguenay, is not charged, and cannot be charged, with any acts constituting breaches of the charter party; its receipt of the tender of The Linda amounted to no more than an acquiescence in that which San Martine, the owner, voluntarily offered; the libeling of the Santa Ana at Honolulu and its detention there rather than at Tampa, Florida, could not be asserted to be a violation of any provision of the charter party. (Appellant concedes that as a general proposition an aggrieved party may proceed by admiralty attachment despite a provision for arbitration.) What the arbitrators found was: "We consider that Saguenay acted arbitrarily and unreasonably in not taking action (to which they were clearly entitled) of arresting the S/S 'Santa Ana' at Tampa, Florida."

Appellee's argument is therefore that since none of the things done by Saguenay for which damages were awarded constituted a breach or violation of the charter party, the arbitrators had no authority to award the damages here in question. In short, the contention is that the arbitrators before awarding damages must first have found that Saguenay had breached or violated the charter party, and since the arbitrators did not and could not make any such finding, the award of these sums was in excess of their authority.

We find it unnecessary to consider whether this argument as to the finding of breach of the charter party as a necessary prerequisite to an award of damages would be a valid one if the arbitration here took place pursuant to the provisions of Sec. 17 of the charter party quoted in footnote 1, supra. It is plain that the arbitration here involved was not made solely according to that provision but proceeded under and pursuant to the supplemental agreement for arbitration of July 3, 1958, the terms of which we have previously described.

A reference to that agreement discloses that after reciting at considerable length all the preceding dealings and negotiations between the parties, and the acts and things done by them, the parties agreed to submit to arbitration "all disputes between them arising out of the notice of November 9, 1956, and all claims which they assert against each other as a result of such notice, and of the *actions and positions which they respectively took thereafter.*" (Emphasis added.)

In the third paragraph of the operative portion of the agreement it was provided that the arbitration should be in two parts: the first part dealing with the notice of cancellation and its consequences; and the second part dealing with all other matters including the damages recoverable as a result of such notice and as a result *"of their actions thereafter".* (Emphasis added.)

It seems to us that the broad and all-inclusive terms of that agreement furnish a complete answer to the contention that the only damages authorized to be awarded were those arising from a breach or violation of the charter party. Clearly enough there is submitted to the arbitrators all claims of either party against the other as a result of "the actions and positions which they respectively took thereafter" (that is to say,

2. The order also recited: "That the question of an award for damages of a punitive nature is a matter for this Court and since this Court is of the opinion that the libel was filed in good faith, no punitive damages will be allowed but costs shall be taxed to Libelant in accordance with law."

after the notice) and it contemplated damages recoverable by either of the parties from the other as a result "of their actions thereafter".

■ It is our opinion that the awards here made came within these broad and general terms just referred to. The record shows that San Martine claimed before the arbitrators, among other things, that it be awarded some $107,000 as damages sustained during the 1957 season by virtue of the chartering of The Linda as substitute for the Santa Ana. This claim appears to have been based upon the contention that the fair value of the use of The Linda exceeded the payments made pursuant to the charter for its use by that amount. This claim the arbitrators disallowed; but they did hold in making the award that Saguenay should not be entitled to any profit for using The Linda in 1957 and the $26,360 awarded in this connection were the admitted profits made by Saguenay from the use of The Linda.

With respect to the other item of damages, the arbitrators recited: "We are at a loss to understand why Saguenay bypassed Tampa, Florida, to libel the vessel as she was loading scrap at that port for about three weeks—if action has been taken at that port, the vessel would not have been delayed and little, if any, expense incurred." The arbitrators then proceeded in the manner we have previously indicated to hold that Saguenay "acted arbitrarily and unreasonably" in not arresting the Santa Ana at Tampa, Florida.

It may well be that the arbitrators' views of the facts and of the law relating to the matters on account of which they awarded damages are open to serious question. Were it material here it might be possible to question whether the award for the profits received from The Linda would come within the ordinary rules of law relating to unjust enrichment or recovery therefor.

With respect to the award arising out of San Martine's expenses incident to the attachment detention of the Santa Ana at Honolulu, it may well be that the arbitrators' view of the law was questionable. There is no proof of malice in making attachment there rather than at Tampa, and hence the arbitrators may have been mistaken in their view of the law respecting abuse of process, if that was the rationale of their decision.

But an award such as this, which is one within the terms of the submission, will not be set aside by a court for error either in law or fact. This rule and the reasons for it were set forth in Burchell v. Marsh, 17 How. 344, 58 U.S. 344, 349, 15 L.Ed. 96: "Arbitrators are judges chosen by the parties to decide the matters submitted to them, finally and without appeal. As a mode of settling disputes, it should receive every encouragement from courts of equity. If the award is within the submission, and contains the honest decision of the arbitrators, after a full and fair hearing of the parties, a court of equity will not set it aside for error, either in law or fact. A contrary course would be a substitution of the judgment of the chancellor in place of the judges chosen by the parties, and would make an award the commencement, not the end, of litigation."

■ As stated in Amicizia Societa Navegazione v. Chilean Nitrate and Iodine S. Corp., 2 Cir., 274 F.2d 805, 808: "The statutory provisions, 9 U.S.C.A. §§ 10, 11, in expressly stating certain grounds for either vacating an award or modifying or correcting it, do not authorize its setting aside on the grounds of erroneous finding of fact or of misinterpretation of law." [3]

3. Cf. Hartford Fire Ins. Co. v. Bonner Mercantile Co., 9 Cir., 56 F. 378, 382: "There is no doubt that the umpire decided the points of difference between the arbitrators, and, having done so, and his award having met the approval of one of the arbitrators, his judgment is conclusive, however erroneous the court may be inclined to consider it." James Richardson & Sons v. W. E. Hedger Transp. Corp., 2 Cir., 98 F.2d 55, 57: "This court is without power to amend or overrule merely because of disagreement with matters of law or facts determined by the arbitrators."

As noted in the case just cited, the Supreme Court in Wilko v. Swan, 346 U.S. 427, 436, 74 S.Ct. 182, 187, 98 L.Ed. 168, stated, (probably by way of dictum): "In unrestricted submissions * * * the interpretations of the law by the arbitrators in contrast to manifest disregard are not subject, in the federal courts, to judicial review for error in interpretation," citing Burchell v. Marsh, supra, and other cases. The court did not undertake to define what it meant by "manifest disregard" or indicate where the line would be drawn between a case of "manifest disregard" and a case of error in interpretation of the law.[4] In this context it would appear that manifest disregard of the law must be something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law.

■ In the later case of Bernhardt v. Polygraphic Co., 350 U.S. 198, 203, 76 S. Ct. 273, 276, 100 L.Ed. 199, the court said: "Arbitrators do not have the benefit of judicial instruction on the law; they need not give their reasons for their result; the record of their proceedings is not as complete as it is in a court trial; and judicial review of an award is more limited than judicial review of a trial— all as discussed in Wilko v. Swan, 346 U. S. 427, 435–438, 74 S.Ct. 182, 186, 188, 98 L.Ed. 168." At this point is inserted a footnote beginning: "Whether the arbitrators misconstrued a contract is not

open to judicial review". We apprehend that a manifest disregard of the law in the context of the language used in Wilko v. Swan, supra, might be present when arbitrators understand and correctly state the law, but proceed to disregard the same. We think this is the sort of thing the Court had in mind in United Steelworkers of America v. Enterprise Corp., 363 U.S. 593, 597, 180 S.Ct. 1358, 1361, 4 L.Ed.2d 1424, when it said "Nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. *When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.*"[5] (Emphasis added.)

■ Similar manifest infidelity to what the arbitrators know to be the law, but deliberately disregard might well be regarded as the use of "undue means" within the meaning of subdivision (a) of 9 U.S.C. § 10, or amount to "partiality" within the meaning of subdivision (b) thereof.[6] We find no evidence of any such situation here.

As was noted in Amicizia Societa, supra [274 F.2d 808], the statutory grounds for vacating or modifying the award of arbitrators are stated in Secs.

4. Frankly, the Supreme Court's use of the words "manifest disregard", has caused us trouble here. Conceivably the words may have been used to indicate that whether an award may be set aside for errors of law would be a question of degree. Thus if the award was based upon a mistaken view of the law, but in their assumption of what the law was, the arbitrators had not gone too far afield, then, the award would stand; but if the error is an egregious one, such as no sensible layman would be guilty of, then the award could be set aside. Such a "degree of error" test would, we think, be most difficult to apply. Results would likely vary from judge to judge. We believe

this is not what the court had in mind when it spoke of "manifest disregard".

5. While that case involved arbitration of a labor dispute, and hence in some respects governed by special rules, (see United Steelworkers of America v. Warrior & Gulf Co., 363 U.S. 574, 578, 80 S.Ct. 1347, 4 L.Ed.2d 1409) yet it would appear that the language here quoted would be considered generally applicable to any arbitration.

6. "(a) Where the award was procured by corruption, fraud, or undue means.
"(b) Where there was evident partiality or corruption in the arbitrators, or either of them."

10 and 11 of Title 9 U.S.C.,[7] and neither section authorizes the setting aside of an award "on grounds of erroneous finding of fact or misinterpretation of law". It is inconceivable that in enacting these sections Congress was unaware of the rule of Burchell v. Marsh, supra, to the effect that a court will not set aside a decision of the arbitrators for error either in law or fact. Had Congress contemplated that any different rule should now become operative, or that a mere error of law should be a basis for setting aside an award, it would have had no difficulty in drafting a separate subdivision of sections 10 or 11 which would say that.

We hold therefore that since the supplemental agreement between the parties was broad enough to authorize the board of arbitrators to consider and decide the disputes between the parties which are here in question, the court below was without authority to set aside this award. The arbitrators themselves had not exceeded their powers.

As for the comment of the court (footnote 2, supra), that there was here involved an award for damages of a punitive nature, we find no basis for such a comment. Manifestly nothing of that kind was included or involved in this award.

The judgment is reversed and the cause is remanded with directions to sustain and confirm the award in all particulars, and to take such further action as may be required not inconsistent with this opinion.

7. "§ 10. * * * In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

"(a) Where the award was procured by corruption, fraud, or undue means.

"(b) Where there was evident partiality or corruption in the arbitrators, or either of them.

"(c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

"(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

"(e) Where an award is vacated and the time within which the agreement required the award to be made has not expired the court may, in its discretion, direct a rehearing by the arbitrators."

"§ 11. * * * In either of the following cases the United States court in and for the district wherein the award was made may make an order modifying or correcting the award upon the application of any party to the arbitration—

"(a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award.

"(b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted.

"(c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

"The order may modify and correct the award, so as to effect the intent thereof and promote justice between the parties."