Leon **KIRSCHNER** and Henry Naftulin, individually and as co-partners, trading as K–N Enterprises

v.

**WEST COMPANY.**

Civ. A. No. 27579.

United States District Court
E. D. Pennsylvania.
Jan. 15, 1965.

Harry R. Kozart and Weissman & Kozart, Philadelphia, Pa., for plaintiff.

Theodore Voorhees and Dechert, Price & Rhoads, Philadelphia, Pa., for defendant.

LUONGO, District Judge.

This matter is before me on two motions: defendant's to confirm, and plaintiffs' to vacate, the award of an arbitrator pursuant to the provisions of United States Arbitration Act, 9 U.S.C.A. §§ 9 and 10, respectively. The award was rendered in connection with a dispute arising out of a contract dated July 15, 1952. The background out of which these motions emerge is:

The United States Army uses and has used rubber stoppers as closures for bottles containing pharmaceuticals. Seeking to avoid contamination of the contents of those bottles by the stoppers, the Army, in 1941, drew up specifications for lacquer coatings to be applied to the stoppers. Defendant, a manufacturer of closures for the pharmaceutical industry, had tried to meet the specifications, but had not been successful.

In 1951, the plaintiffs succeeded in developing a lacquer which, when tested, met the Army's requirements. In July 1952, plaintiffs granted an exclusive license to the defendant to manufacture and sell the lacquer made from their formula. Under the agreement, which was for a term of seven years, plaintiffs disclosed their secret formula to defendant, and defendant, although not obligated to use the formula, agreed to pay royalties to plaintiffs in the event it used the lacquer. Defendant further agreed to disclose and to turn over to plaintiffs, as plaintiffs' property, any improvements in plaintiffs' formula developed by defendant. The agreement provided for arbitration of any disputes arising under it.

After the contract was entered into, plaintiffs and defendant, by joint efforts, improved the formula to the point where production was commercially feasible. Defendant produced and used the

lacquer and paid the royalties called for in the agreement.

In 1954, defendant, through one of its own staff, discovered another lacquer, simpler to produce, but which also met the Army specifications. Thereafter use of plaintiffs' formula gradually diminished until finally it was discontinued and payment of royalties ended.

In 1960, plaintiffs filed a complaint in this court charging that defendant had breached a confidential relationship and had converted their secret formula without properly accounting for the royalties due. The defendant moved for a stay of proceedings pending the arbitration contracted for in the agreement between the parties. The stay was granted by the late Circuit Judge Goodrich, sitting specially as a district court judge. Kirschner v. West Co., 185 F.Supp. 317 (E.D.Pa.1960). Since the order granting the stay was interlocutory, an appeal therefrom was dismissed. Kirschner v. West Co., 300 F.2d 133 (3d Cir. 1962). The parties thereupon selected the Honorable Horace Stern, former Chief Justice of the Pennsylvania Supreme Court, as arbitrator, and proceeded to arbitrate the dispute. Justice Stern made an award in favor of the defendant, West Company, following which the motions now before me were filed.

At the outset plaintiffs assert that Judge Goodrich did not have jurisdiction to order a stay of proceedings pending arbitration.

■ Defendant's motion for a stay was based upon § 3 of the Arbitration Act. Judge Goodrich noted that that section's " * * * compulsory effect is applicable only to those contracts covered by Section 2 of the Act, i. e., 'any maritime transaction or * * * contract evidencing a transaction involving commerce.' Bernhardt v. Polygraphic Co., 350 U.S. 198, 201–202, 76 S.Ct. 273, 275–276, 100 L.Ed. 199 (1956)." Kirschner, supra, 185 F.Supp. p. 319. Observing that the contract (a copy of which is attached to the pleadings) dealt with coatings to be used in the pharmaceutical industry, Judge Goodrich judicially noticed that that industry covers the whole country, and concluded that the contract involved commerce and that he had jurisdiction to order the stay.

Plaintiffs take issue with Judge Goodrich's taking judicial notice of the scope of the pharmaceutical industry and his finding that this contract involved commerce. There was ample support in the pleadings themselves for Judge Goodrich's finding and conclusion in that regard. See his Opinion in Kirschner, supra, p. 319 n. 5. Cf. Ohio Bell Telephone Co. v. Public Utilities Comm., 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093 (1937). There is no merit in plaintiffs' jurisdictional objection.

■ As for plaintiffs' objections to the arbitration award itself, it is well to keep in mind at the outset that arbitration awards cannot be set aside " * * * on grounds of erroneous finding of fact or of misinterpretation of law." Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp., 274 F.2d 805, 808 (2d Cir. 1960), cert. denied, 363 U.S. 843, 80 S.Ct. 1612, 4 L.Ed.2d 1727 (1960); San Martine Compania De Navegacion, S. A. v. Saguenay Terminals, Ltd., 293 F.2d 796 (9th Cir. 1961). The only grounds upon which an arbitration award may be vacated are set forth in § 10 of the Arbitration Act. Plaintiffs rely specifically on two of those provisions:

"§ 10. * * *

In either of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—

(a) Where the award was procured by corruption, fraud, or undue means.

*     *     *     *     *     *

(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the

subject matter submitted was not made."

Dealing with the arguments in the order in which they appear in the brief, plaintiffs first contend that Justice Stern so misconceived the issues, i. e. "he so imperfectly executed [his powers]" that to do anything but vacate his decision would be an injustice.

Plaintiffs' position seems to be: Plaintiffs made a confidential disclosure to the defendant out of which arose a fiduciary relationship; defendant breached its fiduciary duty by "misappropriating the disclosure" for its own use and thereby became a trustee ex maleficio, and was thus required to account to plaintiffs in damages. The crux of that argument is that there was a misappropriation. It is exactly this point that Justice Stern addressed himself to:

> "[T]here is therefore only a single determinative question in the present case, namely, has defendant been using and is it now using a lacquer based upon, or that in any way utilizes, the confidential disclosure made by plaintiffs under the contract, or is the lacquer now used by it,—hereinafter referred to as the Y–40 lacquer,—different in all substantial respects from the K–N [plaintiffs'] lacquer and not at all dependent upon the trade secret revealed in that disclosure?" Opinion of Arbitrator, p. 4.

The issue developed by the arbitrator seems to be the heart of the inquiry, for if it were found (as it was) that the defendant had developed its own lacquer independently of what had been disclosed to it by plaintiffs, then nothing had been appropriated from plaintiffs, and therefore defendant owed them no duty to account. What plaintiffs' argument boils down to is that they believe they were entitled to judgment as a matter of law. The record before the arbitrator justifies no such conclusion. There is nothing before me to indicate that the arbitrator misconceived the is-

sues or that he, in any sense, "improperly executed" his powers.

Plaintiffs' second argument for vacating the arbitrator's award is based upon § 10(a) of the Act. They contend that defendant's witnesses committed perjury and thereby defendant obtained the award in its favor by "undue means."

As Judge Augustus Hand, in a somewhat similar context, had occasion to remark with respect to an allegation of perjury

> "* * * since it necessarily raises issues of credibility which have already been before the arbitrators once, the party relying on it must first show that he could not have discovered it during the arbitration, else he should have invoked it as a defense at that time." Karppinen v. Karl Kiefer Mach. Co., 187 F.2d 32, 35 (2d Cir. 1951).

Plaintiffs have not attempted to produce any after discovered evidence to establish that defendant's witnesses testified falsely, rather they rely on the very evidence which was before the arbitrator. They point to certain alleged inconsistencies in the oral testimony of defendant's witnesses and alleged conflicts between oral testimony and writings in evidence as physical exhibits. These matters were all for the arbitrator. Credibility of witnesses is always for the fact finder, and this is especially so when the fact finder is an arbitrator. Amicizia Societa Navegazione v. Chilean Nitrate & Iodine Sales Corp., supra. If the perjury of defendant's witnesses was as patent as is now claimed, it should have been made apparent to the arbitrator in the proceedings before him. In effect, what plaintiffs are now asking me to do is to substitute my judgment for the arbitrator's as to the credibility of witnesses who appeared before him, and beyond that, to conclude not only that the testimony of defendant's witnesses should not have been accepted as true and accurate, but that it was deliberately false. The arbitrator, whose experience and ability plaintiffs readily concede,

had the opportunity to observe the witnesses and to assess their credibility. He accepted the testimony of defendant's witnesses as reliable. His determination suffers from none of the defects enunciated in § 10 and is, therefore, binding.

Finding nothing that compels vacating the arbitrator's award, it will be affirmed.