No.   94-189

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

PHIL MAY and BETTY MAY,

      Plaintiffs and Respondents,

  -vs-

FIRST NATIONAL PAWN BROKERS, LTD.,

      Defendant and Appellant.

FILED

DEC 15 1994

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable John McCarvel, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

        Patrick R. Watt; Jardine, Stephenson, Blewett &
        Weaver, Great Falls, Montana

      For Respondents:

        Howard F. Strause, Attorney at Law, Great Falls,
        Montana

Submitted on Briefs:  October 5, 1994

Decided:  December 15, 1994

Filed:

_____
Clerk

Justice Karla M. Gray delivered the Opinion of the Court.


First National Pawn Brokers, Ltd. appeals from a judgment entered against it by the Eighth Judicial District Court, Cascade County, and, more specifically, from the court's refusal to vacate an arbitration award in favor of Phil and Betty May. We affirm, concluding that the District Court did not err in refusing to vacate the award on the basis of evident partiality or manifest disregard of the law.

Phil and Betty May (collectively, the Mays) brought an action against First National Pawn Brokers, Ltd. (FNP) for wrongful discharge under Montana's Wrongful Discharge From Employment Act. They alleged that they were hired in April 1989, to manage FNP's Great Falls store, and that they were induced to move to Great Falls from their home in Laurel by FNP's salary offer to each of them of 5% of the gross revenues of the store. They further alleged that their long work hours and six-day work weeks were largely responsible for the increase in the store's monthly gross from $16,000 to $100,000 during their tenure as managers.

According to the Mays, FNP cut each of their salaries from 5% to 3.4% of the gross in 1991, promising at that time never to reduce the salaries below that amount. They contended that over a three-day period in August 1993, FNP unilaterally reduced their compensation, yelled at them and made abusive remarks, and wrongfully discharged them.

FNP denied the material allegations of the Mays' complaint. It

2

asserted a number of affirmative defenses, including that the Mays voluntarily quit, that they did not mitigate their damages, and that their refusal to accept an offer of reemployment bars any recovery. The Mays offered to arbitrate the dispute pursuant to § 39-2-914, MCA. FNP accepted. The parties stipulated that the arbitrator would be Gordon R. Bennett (Arbitrator), retired district court judge, and the District Court appointed him to arbitrate the dispute.

An arbitration hearing was held on January 12, 1994. In his subsequent Memorandum and Award, the Arbitrator determined that the Mays were constructively discharged without good cause and, therefore, were wrongfully discharged. He set forth applicable statutory and case law definitions and a number of actions by Ben Brown, FNP's agent, in support of his determination. Each of the Mays was awarded $132,432 in damages.

The Mays moved the District Court to confirm the arbitration award; FNP moved to vacate it. The court confirmed the award and entered judgment thereon. FNP appeals.

The issue on appeal is whether the District Court erred in refusing to vacate the award on the basis of evident partiality or manifest disregard of the law. Our standard in reviewing a court's refusal to vacate an arbitration award is whether the court abused its discretion. Duchscher v. Vaile (No. 94-188, decided December 15, 1994, slip op. p. 6).

Montana's Wrongful Discharge From Employment Act specifically provides for the voluntary arbitration of discharge disputes.

3

Section 39-2-914, MCA.  Once an offer to arbitrate is made and accepted,

> arbitration is the exclusive remedy for the wrongful discharge dispute and there is no right to bring or continue a lawsuit under [the WDEA].  The arbitrator's award is final and binding, subject to review of the arbitrator's decision under the provisions of the Uniform Arbitration Act.

Section 39-2-914(5), MCA.  Applying the statute to the record before us, it is clear that the Mays and FNP voluntarily undertook final and binding arbitration of their dispute, subject only to such review as is authorized by the Uniform Arbitration Act.

Montana's Uniform Arbitration Act (MUAA) was adopted in 1985; it is codified at Title 27, Chapter 5, of the Montana Code Annotated.  Under its provisions, a district court must confirm an arbitration award upon application of a party unless timely urged to vacate or modify the award.  Section 27-5-311, MCA.  It is undisputed that the Mays applied to the District Court for confirmation and that FNP timely urged that the award be vacated.

Judicial review of an arbitration award is strictly limited by statute.  Duchscher, slip op. at 4.  The grounds for vacating an arbitration award on application of a party are specified in § 27-5-312(1), MCA:

> (a)  the award was procured by corruption, fraud, or other undue means;
> (b) there was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;
> (c) the arbitrators exceeded their powers;
> (d)  the arbitrators refused to postpone the hearing upon sufficient cause being shown therefor or refused to

4

hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of 27-5-213, as to prejudice substantially the rights of a party; or

(e) there was no arbitration agreement and the issue was not adversely determined in proceedings under 27-5-115 and the party did not participate in the arbitration hearing without raising the objection.

The MUAA clearly does not authorize judicial review of arbitration awards on the merits of the controversy. Duchscher, slip op. at 6.

Did the District Court abuse its discretion in refusing to vacate the award pursuant to § 27-5-312, MCA, on the basis of evident partiality?

FNP argues that the award, or the Arbitrator's conduct, shows evident partiality and, thus, that the award must be vacated pursuant to § 27-5-312(1)(b), MCA. Its argument is premised on the following allegations of partiality:

1. The Arbitrator asked a number of irrelevant questions of FNP officer and stockholder Barbara Brown, concerning FNP's stockholders and stock transfers;

2. the Arbitrator "badgered" witness Barbara Brown via the asking of one question;

3. the Arbitrator's use of language such as "demonstrated no gratitude," "exploited them unconscionably," and "oppressed them" in characterizing FNP's conduct in the written arbitration award; and

4. the Arbitrator's interpretation of a September 1993, letter to the Mays' counsel as containing an "implication that dismissal of the instant lawsuit would be a condition of re-employment."

5

FNP relies on the following-united States Supreme Court and United States Circuit Courts of Appeals cases in support of its position: Commonwealth Coatings Corp. v. Continental Casualty Co. (1968), 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301, reh. den. 393 U.S. 1112, 89 S.Ct. 848, 21 L.Ed.2d 812; Morelite Const. v. N.Y.C. Dist. Council Carpenters (2nd Cir. 1984), 740 F.2d 79; and Stroehmann Bakeries v. Local 776 (3rd Cir. 1992), 969 F.2d 1436.

We note that FNP merely extracts principles and statements from these cases without attempting to establish how or why the cases are applicable to the facts and circumstances before us. Nonetheless, we distinguish each below.

We begin by addressing Commonwealth and Morelite, both of which involved existing and uncontested relationships--one business and one familial--between the arbitrator and a party to the arbitration. In Commonwealth, the losing subcontractor in an arbitration proceeding sought to vacate an award under the United States Arbitration Act's (USAA) "evident partiality" standard. The contractor and the subcontractor each selected an arbitrator and those arbitrators selected a third arbitrator. Unbeknownst to the subcontractor, the third arbitrator had significant business dealings with the contractor and had rendered services on the very projects involved in the arbitration. After an award had been made, the subcontractor became aware of the relationship and sought to have the award vacated.

In the course of discussing the "evident partiality" standard in general, Justice Black, writing for a plurality of four

6

justices, stated that "any tribunal permitted by law to try cases and controversies not only must be unbiased but also must avoid even the appearance of bias." Commonwealth, 393 U.S. at 150. The Supreme Court decided the case by requiring that arbitrators "disclose to the parties any dealings that might create an impression of possible bias." Commonwealth, 393 U.S. at 149.

The case presently before us does not involve allegations of existing business or social relationships between the Arbitrator and the Mays. Thus, the Supreme Court's Commonwealth disclosure requirement has no application here.

Moreover, even if the plurality's broad statement that arbitrators must avoid even the appearance of bias were the Supreme Court's holding in the case, it cannot be applied in a vacuum. The type of bias being addressed by the Supreme Court in Commonwealth—a direct, ongoing, undisclosed business relationship involving pecuniary gain to the arbitrator—might well meet any definition of "evident partiality." Such partiality is not presented, even by allegation, here.

Similarly, the Second Circuit Court of Appeals' Morelite decision is entirely inapposite to the case before us. There, the Second Circuit applied the "evident partiality" standard from the USAA to an arbitration award involving a construction contractor and a local union, noting that "what constitutes 'evident partiality' by an arbitrator is a troubling question." Morelite, 748 F.2d at 82. It rejected a mere "appearance of bias" standard, determined that a "proof of actual bias" standard would be

7

insurmountable, and held that "evident partiality" within the meaning of the USA?. "will be found where a reasonable person would have to conclude that an arbitrator was partial to one party to the arbitration." Morelite, 740 F.2d at 84. Applying that standard, the Second Circuit vacated the award before it on the basis of the father-son relationship between the arbitrator and an officer of the international union whose local was a party to the arbitration. Morelite, 748 F.2d at 85. We are not faced with such a relationship, or anything even remotely akin to one, here.

Finally, we examine the Third Circuit's Stroehmann decision, cited by FNP for the proposition that evident partiality may be shown by such indications of bias as may be found both in an arbitrator's behavior and comments during the hearing and in his opinion, and by indications that his findings and conclusions are based on something other than reason and fact. Suffice it to say in this regard that the Third Circuit's affirmance of the vacating of an arbitration award was not based on the USAA's "evident partiality" standard. The award in Stroehmann was vacated under the Labor Management Relations Act's public policy exception to the general rule that courts may not review the merits of arbitration awards. Stroehmann, 969 F.2d at 1441. The present case does not present such a situation. The discussion in Stroehmann of the arbitrator's bias and partiality related to whether the trial court's remedial order remanding for hearing before a different arbitrator was proper. Stroehmann, 969 F.2d at 1446. That situation also is not before us here.

8

Having distinguished the primary authorities relied on by FNP, we examine FNP's allegations of partiality to determine whether the District Court erred in refusing to vacate the arbitration award before us pursuant to § 27-5-312(1)(b), MCA, on grounds of evident partiality. We do so only briefly faced, as we are, with FNP's failure to cite to any decisions of sister states on the subject. While we recognize that no Montana decisions have interpreted the MUAA's "evident partiality" standard, the legislature has directed that we be guided by decisions in sister states which have enacted the Uniform Arbitration Act in order to effectuate the purpose of keeping the law uniform. See § 27-5-112, MCA (emphasis added).

The burden of proof in establishing a statutory basis for vacating an arbitration award is on the party attacking the award, here FNP. The partiality which will suffice to vacate an arbitration award must be certain, definite and capable of demonstration; alleged partiality which is remote, uncertain or speculative is insufficient. William B. Lucke, Inc. v. Spiegel (Ill. App. 1970), 266 N.E.2d 504, 508.

FNP's allegations of partiality by the Arbitrator during the hearing are that he asked a number of irrelevant questions of an FNP witness and, via one specific question, "badgered" her. FNP contends that similar conduct was sufficient to constitute evident partiality in Holodnak v. Avco Corp. (D. Conn. 1974), 381 F.Supp. 191. We disagree.

Holodnak involved First Amendment considerations relating to the plaintiff's publishing of an article critical of his employer's

9

and union's practices.  Throughout the proceedings, the arbitrator permitted questions about the plaintiff's reading habits, political views and personal background; the arbitrator himself participated in questioning about the plaintiff's views on communism and a trip to Cuba in 1960.  He repeatedly showed undue concern for the plaintiff's motives and at times openly badgered the plaintiff by persistent questioning.  On the basis of such a record, the federal district court found  "clear bias revealed by the arbitrator's comments throughout the arbitration proceedings," and vacated the award under the USAA's evident partiality standard.  Holodnak, 381 F.Supp. at 199.

Our scrutiny of  the transcript before us  in this case discloses no such improper conduct, bias or partiality by the Arbitrator.  One series of arguably irrelevant questions and one other question characterized as "badgering" are not the quantitative equivalent of the repeated and persistent conduct of record in Holodnak.  Furthermore, while the Arbitrator's series of questions relating to FNP's stockholders and stock transfers may have been of limited relevance here, the federal district court's concern in Holodnak clearly was premised on the intrusive nature of the arbitrator's questions into areas and views protected by free speech or privacy interests.

Nor do we agree that the Arbitrator's asking of one question-- which may have been perceived by FNP as rude or even hostile-- constitutes the kind of badgering established by the record in Holodnak.  Absent actual  overt misconduct, a disappointed party's

perception of an arbitrator's rudeness is not the sort of "evident partiality" contemplated as grounds for vacating an award. <u>See</u> Fairchild & Co. v. Richmond, F. & P.R. Co. (D.D.C. 1981), 516 F.Supp. 1305.

FNP's remaining allegations of partiality concern the Arbitrator's choice of language in characterizing acts of Ben Brown on FNP's behalf, and his interpretation of a September 1993, letter. While FNP argues that these inclusions in the Arbitrator's written award establish "evident partiality" under § 27-5-312(1)(b), MCA, we do not agree. At best, these arguments amount to speculative and conclusory allegations of partiality rather than the direct and demonstrable evidence of partiality required to vacate an award.

Indeed, boiled down to their essence, FNP's award-based allegations constitute nothing more than disagreement by the losing party with the Arbitrator's weighing of the evidence, credibility determinations, and ultimate resolution of the dispute. Through the guise of partiality arguments, FNP essentially seeks to have this Court review the merits of the controversy and the extent to which the evidence supports the Arbitrator's decision. We are not free to do so under the MUAA. <u>See</u> <u>Duchscher</u>, slip op. at 6; Seither & Cherry Co. v. Ill. Bank Bldg. Corp. (Ill. App. 1981), 419 N.E.2d 940, 945.

We conclude that FNP's partiality allegations relating to the Arbitrator's conduct during the hearing and the arbitration award do not establish "evident partiality" under § 27-5-312(1)(b), MCA.

11

We hold, therefore, that the District Court did not abuse its discretion in refusing to vacate the award on that basis.

> Did the District Court abuse its discretion in refusing to vacate the award on the basis of manifest disregard of the law?

FNP also argues that we should adopt the approach of some federal courts that an arbitration award based on "manifest disregard of the law" will not be enforced and, on that basis, vacate the award before us. FNP's contention is that the Arbitrator manifestly disregarded the law in the following ways:

1. By incorrectly applying the "intolerable working conditions" definition for constructive discharge utilized by the federal district court in Russell v. Mini Mart, Inc. (D. Mont. 1988), 711 F.Supp. 556; and

2. by incorrectly interpreting two alleged offers of re-employment from FNP to the Mays.

FNP begins its argument on this issue by suggesting that this Court "endorsed" the "manifest disregard" approach in McIntosh v. Hartford Fire Ins. Co. (1938), 106 Mont. 434, 78 P.2d 82. McIntosh has no application here. It predated the legislature's enactment of the MUAA by nearly fifty years and, for that reason, can hardly be said to have interpreted the statutes which now govern judicial review of arbitrations. Moreover, our "manifest injustice" language in McIntosh related specifically to insurance appraisal arbitration cases; in any event, it is not equivalent to the "manifest disregard" basis FNP asserts under several federal cases.

12

Nor are we willing to adopt the manifest disregard basis for vacating an arbitration award as FNP presents it here. As in the first issue, FNP extracts and reiterates general statements from three decisions of the United States Supreme Court and the Circuit Courts of Appeals. It makes no effort to establish how or why the case before us fits within the factual context of the cases containing the statements.

Moreover, FNP does not analyze how this Court properly could adopt and apply the manifest disregard standard given the strictly limited judicial review available under the MUAA and our statutory obligation to refrain from inserting into statutes matters not included by the legislature. See Duchscher, slip op. at pp. 4-5; §§ 27-5-312 and 1-2-101, MCA. Significantly, as in the first issue, FNP presents no authority from sister states applying the manifest disregard standard under their respective Uniform Arbitration Acts. It is clear that the legislature intended us to be guided by such sister state decisions in interpreting the MUAA, rather than simply following blindly every federal approach to arbitration.

Nor are the federal cases on which FNP relies in urging the "manifest disregard" basis for vacating an arbitration award particularly persuasive or useful. FNP first cites to Wilko v. Swan (1953), 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed 168, as the seminal case on the subject. No specific quote is offered and no mention of the facts of that case is made. In any event, however, the United States Supreme Court has expressly overruled Wilko,

13

determining that it was pervaded by traditional judicial hostility to arbitration. Rodriguez de Quijas v. Shearson/Am. Exp. (1989), 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526.

Next, FNP relies on San Martine Compania de Nav. v. Saguenay Term. Ltd. (9th Cir. 1961), 293 F.2d 796, as authority that manifest disregard may exist (1) where the arbitrator understands and correctly states the law, but proceeds to disregard it; and (2) if the record reveals a clear infidelity to what the arbitrator knows to be the law, but deliberately disregards. We note that the Ninth Circuit includes these types of statements primarily as quotes from the subsequently overruled <u>Wilko</u> decision and, indeed, characterizes them as "probably dictum" by the Supreme Court in that case. Moreover, the <u>San Martine</u> court clearly was troubled by the Supreme Court's lack of definition of "manifest disregard" as it must be distinguished from mere errors of law which are not reviewable by courts. <u>San Martine</u>, 293 F.2d at 801. FNP does not cite to any post-<u>Rodriquez de Quiias</u> decisions from the Ninth Circuit or any other Circuit Court of Appeals addressing what might remain of the "manifest disregard" basis after <u>Rodriquez de Ouiias.</u>

We glean the following from FNP's limited presentation of the "manifest disregard" standard: (1) that <u>Wilko,</u> asserted to be the seminal "manifest disregard" case, has been overruled; (2) that the "manifest disregard" basis probably was dicta even in its initial manifestation in <u>Wilko</u>; and (3) that FNP has offered no post-<u>Rodriquez de Ouiias</u> analysis of the status of the "manifest disregard" basis for vacating an arbitration award in the federal

14

court s, much less an analysis establishing how this Court properly could and should engraft such a basis onto a statute strictly limiting judicial review of arbitration awards. As presented in this case, we decline to adopt the "manifest disregard of the law" basis for vacating an arbitration award and, therefore, do not attempt to apply such a basis to the record before us.

We hold that the District Court did not abuse its discretion in refusing to vacate the award on the basis of manifest disregard of the law.

> Are the Mays entitled to Rule 32, M.R.App.P., damages because FNP's appeal lacks substantial and reasonable grounds?

The Mays request that we assess damages against FNP pursuant to Rule 32, M.R.App.P., because the law is clear on the issues raised in the appeal, and the appeal is frivolous, mean-spirited or taken for purpose of delay, and totally without merit

While we agree that the record before us does not establish evident partiality under any reasonable interpretation of that statutory language, we have not heretofore addressed that *issue;* thus, we cannot say that the law in Montana was clear on this issue prior to this case. On that basis, Mahrt v. Kalispell (1984), 213 Mont. 96, 690 P.2d 418, is distinguishable. Moreover, FNP did request a "change" from existing law, however inartfully presented, via its request that we adopt the manifest disregard basis for vacating an arbitration award. To that extent, the Mays' reliance on Lussy v. Davidson (1984), 210 Mont. 353, 683 P.2d 915, is

15

misplaced.

Nor can we conclude from anything of record that the appeal is mean-spirited or taken for purpose of delay. While it should be clear from our discussions of the issues that we view this appeal as verging on the frivolous, we cannot conclude that it meets the standards we have established for the assessment of Rule 32 damages. Therefore, we decline to assess such damages.

AFFIRMED.

_____
Justice

We concur:

_____

_____

_____
Justices

Justice Terry N. Trieweiler specially concurring.

I concur with the majority's conclusion that the District Court did not abuse its discretion when it refused to vacate the arbitrator's award.

However, I do not agree with all that is said in the majority opinion. I specifically do not agree with the majority's conclusion that arbitration awards should not be reviewed for manifest disregard of the law.

While the parties in this case did enter into a true agreement to submit their dispute to arbitration; and while it may be more "judicially comfortable" to limit our review to the few bases provided for by statute; we, as a Court, have an independent responsibility to invalidate agreements which are in violation of public policy.

If an agreement to arbitrate relieves the parties to that agreement from their responsibilities provided for by law, as should be inferred from the majority opinion, then in my opinion, that agreement is void because it is contrary to the public policies of this State. The only way to uphold the agreement, then, is to hold that arbitration awards are reviewable for manifest disregard of the law. I also conclude that doing so does not exceed our statutory scope of review.

The majority states that:

> Moreover, FNP does not analyze how this Court properly could adopt and apply the manifest disregard standard given the strictly limited judicial review available under the MUAA and our statutory obligation to

17

> refrain from inserting into statutes matters not included by the legislature.

However, reviewing arbitration awards for manifest disregard for the law is perfectly consistent with the statutory bases for reviewing arbitration awards. Section 27-5-312(1)(b), MCA, provides that arbitration awards may be vacated by a district court where "there was evident partiality by an arbitrator . . . or misconduct prejudicing the rights of any party . . . ."

Those federal decisions which have discussed the meaning of a "manifest disregard of the law" have concluded that it involves more than simply a misapplication of the law. It results where the record reveals that the arbitrator clearly understands the law but deliberately disregards it. *See San Martine Compania de Navegacion, S.A. v. Saquenay Terminal, Ltd.* (9th Cir. 1961), 293 F.2d 796, 801. If understanding, but then blatantly refusing to follow the law is not evidence of partiality or misconduct which prejudices the rights of the victimized party, then I do not know what would satisfy that statutory standard for setting aside an arbitration award.

I am also troubled by the majority's repeated criticism of the appellant for failing to cite to authority from sister states which would allow this Court to review the arbitrator's findings of fact or conclusions of law, while at the same time it refuses to acknowledge that such authority has in fact been brought to its attention.

When discussing whether evident partiality has been established, the majority states:

18

We do so only briefly faced, as we are, with FNP's failure to cite to any decisions of sister states on the subject. While we recognize that no Montana decisions have interpreted the MUAA's "evident partiality" standard, the legislature has directed that we be guided by decisions in sister states which have enacted the Uniform Arbitration Act in order to effectuate the purpose of keeping the law uniform.

Later in its opinion, the majority states that:

Significantly, as in the first issue, FNP presents no authority from sister states applying the manifest disregard standard under their respective Uniform Arbitration Acts. It is clear that the legislature intended us to be guided by such sister state decisions in interpreting the MUAA, rather than simply following blindly every federal approach to arbitration.

New Mexico is a sister state which has enacted the Uniform Arbitration Act at N.M. Stat. Ann. §§ 44-7-1 to -22 (Michie 1978). That state, through the decisions of its highest court, has limited its review of arbitration awards to the statutory bases provided for in the Uniform Act. However, in the application of those statutory criteria, that court has not found it necessary to turn a blind eye to a gross misapplication of the facts or the law. In *Fernandez v. Farmers* Ins. *Co. of Arizona* (N.M. 1993), 857 P.2d 22, 26, that court stated:

We recognize that under appropriate circumstances the district court may find an arbitration panel's mistake of fact or law so gross as to imply misconduct, fraud, or lack of fair and impartial judgment, each of which is a valid ground for vacating an award.

(Citing *Board of Educ. v. Prince George's County Educators' Ass'n* (1987), 309 Md. 85, 522 A.2d 931, 938.)

In other words, even in the judiciary's application of the statutory criteria for reviewing arbitrator awards, there must

19

necessarily be some consideration of the arbitrator's application of the facts and law. The majority opinion erroneously infers that there should be none. I cannot concur in such an abdication of judicial responsibility for the sake of efficiency, nor the implication that there is no authority for the scope of review proposed by the appellant.

For these reasons, I specially concur with the majority opinion

_____
Justice