UNITED STATES of America,
Plaintiff,

v.

Bartolo FAILLA, Defendant.

Civ. A. 668–53.

United States District Court
D. New Jersey.

Dec. 5, 1957.
July 18, 1958.

Chester A. Weidenburner, U. S. Atty., Newark, N. J., by Charles H. Hoens, Jr., Asst. U. S. Atty., Newark, N. J., for the United States.

Max Mehler, Newark, N. J., and John W. Griggs, Paterson, N. J., for defendant.

WORTENDYKE, District Judge.

This action is brought under 8 U.S.C.A. § 1451(a) to set aside and cancel a decree of naturalization entered in the Passaic County Court of Common Pleas of the State of New Jersey, on September 20, 1933, and Certificate of Naturalization No. 2643888, respectively admitting and evidencing the admission of the defendant to the status of a citizen of the United States of America. On June 13, 1956 there was filed with the Clerk of this Court the affidavit of Maurice A. Roberts, an attorney of the Immigration and Naturalization Service of the United States Department of Justice, showing good cause for the institution of this action. Although the action was commenced prior to the filing of the affidavit, it constituted a sufficient compliance with the provisions of the foregoing enabling statutory section. United States v. Lucchese, 2 Cir., 1957, 247 F.2d 123.

Upon the evidence presented upon the trial of this action before me on November 25, 1957, I find the following facts and reach the following conclusions of law thereon:

Findings of Fact

1. On February 25, 1902, the defendant Bartolo Failla was lawfully admitted to the United States of America for permanent residence, following his arrival at the Port of New York, New York, on the S. S. Citta di Milano. Defendant was, at the time of his said arrival in the company of his mother, just short of three years of age. His mother was present in Court but did not testify on the trial of this action.

2. On May 6, 1933 there was received at the office of the United States Naturalization Service in Newark, New Jersey, Form A–2214, "Application for a certificate of arrival and preliminary form for petition of citizenship No. 3–17248." This document, dated April 25, 1933, also bears the stamped number 24115 and is a printed form furnished by the Naturalization Service of the United States Department of Labor. Its blanks are filled in by typewriter and in handwriting, and was concededly signed by the defendant as he is named in this action. This document, consisting of four pages, and with a certificate of arrival dated August 27, 1930 thereto attached, was admitted in evidence and marked Exhibit G–2.

3. The foregoing preliminary petition for citizenship was in due course referred for investigation and verification to Frank M. Steadman, an examiner duly designated for that purpose who was then territorially assigned to Passaic County and certain other Counties in the northerly portion of the State of New Jersey. In the course of the discharge of his duty as examiner, Mr. Steadman interviewed the defendant and questioned him respecting certain of the typewritten inser-

tions in the printed petition form. The items with respect to which the examiner questioned the defendant were indicated by the examiner in certain instances by a check mark and in other instances by a circle, both drawn by pen and ink upon the document. The names of the witnesses at the foot of page 3 of the document, together with information respecting them, were inserted by the examiner in his own handwriting by pen and ink. The examiner testified, and I find, that, among the statements contained in the document concerning which he questioned the defendant, the latter stated, under oath, that he had never been arrested or charged with violation of any law of the United States or State or any city ordinance or traffic regulation; and that he had resided continuously in the United States since February 25, 1902.

4. Examiner Steadman, after verifying, under the oath of the defendant, the contents of the preliminary form for petition for citizenship, turned the document over to the defendant for filing in the Office of the Clerk of the Passaic County Court of Common Pleas. The examiner testified, and I find, that it was the practice, at the time, for a petitioner for admission to citizenship to further verify the petition under oath before the Clerk of the Court or his deputy, and also the practice to post notice of the filing of the document in the Clerk's office.

5. Examiner Steadman testified, and I find, that it was the further practice, at the time of defendant's petition for naturalization, to make no investigation respecting prior arrests of the petitioner where the verifying examination elicited the petitioner's denial thereof and no information to the contrary was evoked as a result of the posting in the Clerk's office of the notice of the filing of the preliminary petition.

6. There was also furnished by the United States Naturalization Service, a document in printed form which was admitted in evidence and marked Exhibit G-3, known as Form No. 2208. It bears the stamped number 24115 (the same as that on Exhibit G-2), is signed by the de-

fendant and by each of his two witnesses, and was sworn to by them on June 14, 1933 before Thomas F. Vigorito, Special Deputy Clerk of Passaic County. On the reverse of this document is the stamped name "Halstead," who was an examiner for the United States Naturalization Service. This name is placed below a legend indicating that the petitioner for naturalization was admitted to citizenship on September 20, 1933. There also appears on the same side of this document, in the handwriting of Examiner Steadman, the legend that the defendant (petitioner for naturalization) had not been absent from the United States within the critical period, had suffered no arrests, had read "O.K.", had "Fair" knowledge of the United States Government, and that his English was "O.K."

7. On September 20, 1933 the defendant (petitioner for naturalization) together with his two witnesses previously referred to, and in the presence of Examiner Halstead, appeared before Judge Delaney of the Passaic County Court of Common Pleas, on which occasion, after further verificatory interrogation of the applicant and his witnesses, the oath of allegiance was administered, whereupon defendant was admitted to citizenship and received a certificate thereof.

8. Examiner Halstead attended in the Court of Common Pleas upon administration of the oath of allegiance and he testified that it was the practice at that time to inquire respecting the criminal record of a petitioner for naturalization and to endorse upon the reverse of the copy of the petition for naturalization any information relative to such criminal record. The same examiner testified that at the time it was also the custom to inquire of the petitioner for naturalization, on his final hearing before the Court preceding the administration to him of the oath of allegiance, whether or not he had been arrested or charged with any crime.

9. On March 30, 1920, following his arrest earlier in the same month, defendant was convicted in Washtenaw County, Michigan, upon a charge against him under the aliases of William Meyers and

Frank Failla, of carrying concealed weapons, for which he was sentenced to State Prison at hard labor for a term of not less than one year and not more than two years.

10. On January 22, 1927 at Paterson, New Jersey, the defendant was arrested under the name of Frank Failla, charged with being a material witness to murder.

11. Upon an indictment by the Passaic County New Jersey Grand Jury, against him under the name of Frank M. Failla, for unlawful possession and transportation of liquor, the defendant pleaded non vult on November 24, 1922 and was sentenced on December 1, 1922 to pay a fine of $150.

12. On March 11, 1925 defendant was arrested in New York City under the name of Frank Failla Martini upon charges of possessing a revolver.

13. On October 2, 1925, defendant, under the name of Frank Failla, was indicted by the Passaic County Grand Jury for unlawfully carrying a concealed weapon. To this indictment defendant, on October 19, 1925, retracted a previous plea of not guilty and pleaded non vult, and a fine of $25 was imposed upon him.

14. On October 2, 1925, defendant, under the name of Frank Failla, was indicted by the Passaic County Grand Jury for assault with a pistol, to which the defendant pleaded not guilty. That indictment was thereafter nolle prossed.

15. On December 24, 1926, defendant, under the name of Frank Failla, was indicted by the Passaic County Grand Jury for unlawfully selling liquor. On April 1, 1927 defendant retracted his previous not guilty plea to the indictment and entered a plea of non vult, upon which he was sentenced to pay a fine of $250.

16. On February 15, 1932, defendant was indicted by the Passaic County Grand Jury for carrying a concealed weapon. To this indictment defendant pleaded not guilty and the indictment was subsequently nolle prossed.

17. The same Grand Jury also indicted defendant, on February 15, 1932, for breaking and entering with intent to steal. After a not guilty plea to this charge, the indictment was nolle prossed.

18. On January 5, 1934, defendant, under the name of Frank Failla, was indicted by the Passaic County Grand Jury for conspiracy to violate the gambling laws, and thereafter, following his plea of not guilty, this indictment was nolle prossed.

19. On January 12, 1934, defendant, under the name of Frank Failla, was indicted by the Passaic County Grand Jury for conspiracy to violate the gambling laws. On February 6, 1934, he was convicted upon said indictment and thereafter sentenced to confinement in State Prison at hard labor for a maximum term of three years and a minimum term of 2½ years and to pay a fine of $1,000.

20. By reason of the frequency of his arrests, indictments and criminal prosecutions, defendant was known to the prosecutor and county detectives of Passaic County, New Jersey, and had appeared several times before Judge Delaney during the period between 1925 and 1934.

21. During the period from April 25, 1933 through September 20, 1933, indictments by the Passaic County Grand Jury were pending against the defendant in that County.

## Conclusions of Law

1. On June 14, 1933 defendant, then an alien resident of the State of New Jersey, and subject to the then Kingdom of Italy, filed in the office of the Clerk of the Court of Common Pleas of Passaic County, New Jersey, a petition for admission to citizenship of the United States.

2. On September 20, 1933 defendant was admitted to citizenship of the United States by decree of the Court of Common Pleas of Passaic County, New Jersey, and a certified copy of said decree was delivered to the defendant designated as Certificate of Naturalization No. 2643888.

3. The said decree admitting the defendant to citizenship and said Certificate of Naturalization delivered to

defendant were procured by concealment of material facts and by wilful misrepresentation on the part of the defendant; for in the proceedings inducing and resulting in his naturalization, defendant alleged, under oath, that he had never been arrested or charged with violation of any law of the United States or State, or any city ordinance or traffic regulation, that he had not used a name other than Bartolo Failla in the United States, and that during the period of five years next preceding his admission to citizenship he had behaved as a person of good moral character. In truth and in fact said allegations and representations were false and so known to the defendant to be.

4. The allegations, representations and statements made by the defendant in his petition for citizenship, and to the Court which granted the decree admitting him to citizenship, were material to his eligibility for naturalization, and his said admission to citizenship was induced and granted in reliance by the appropriate authorities upon the truth of these material representations in the proceedings for naturalization.

5. I conclude that whatever personal knowledge Judge Delaney, the Prosecutor and the county detectives of Passaic County, New Jersey, may have had of defendant's criminal record within that County, is not imputable to the plaintiff or to the examiners or other representatives of the United States Naturalization Service. Despite the knowledge, if any, of the County authorities of arrests or convictions of the defendant within their jurisdiction, there remains the conceded fact of defendant's conviction in Michigan on March 30, 1920, which he wilfully and fraudulently concealed as a material inducement for defendant's admission to citizenship.

6. The decree of the Court of Common Pleas of Passaic County, New Jersey, admitting the defendant Bartolo Failla to United States citizenship on September 20, 1933 must be revoked and set aside, and the Certificate of Naturalization issued to the defendant, based upon said decree, must be surrendered up by the defendant and be cancelled.

7. Defendant must be forever restrained and enjoined from setting up or claiming any rights, privileges, benefits or advantages whatsoever under the said decree of naturalization.

An order for judgment may be presented in accordance with the foregoing findings and conclusions.

### On Motion to Vacate and Set Aside Judgment.

Upon my previous opinion in this case of December 5, 1957, judgment was entered revoking a decree of naturalization entered September 20, 1933, which admitted the defendant to United States citizenship. The action was brought in this Court under 8 U.S.C.A. § 1451(a) as the proper tribunal mentioned in 8 U.S.C.A. § 1421(a) having jurisdiction to entertain the action.

Defendant failed to appeal from the judgment against him and took no other proceedings with respect thereto until June 16, 1958, when he filed a motion under Rule 60(b) of the Rules of Civil Procedure, 28 U.S.C. to vacate and set aside the judgment "because an affidavit showing good cause was not filed with the complaint" in this case. Defendant now contends that the proceedings which resulted in the judgment presently attacked were invalid and that the judgment itself was void.

The complaint in this action charged that the decree admitting the defendant to citizenship was illegally and fraudulently procured because of defendant's false representations in the course of the proceedings resulting in his naturalization. This complaint was filed August 21, 1953, summons was duly issued and served personally upon the defendant, who appeared by counsel therein. Although no "affidavit showing good cause therefor" was filed either with or prior to the filing of the complaint, defendant, after securing an order extending his time to do so, filed his answer in which he admitted plaintiff's allegations of sovereignty, denied the allegations respect-

ing his residence, neither admitted nor denied, but put the plaintiff to its proof as to the allegations respecting his admission to citizenship, denied the allegations of fraud in the procurement of his admission to citizenship, and stated that he had no knowledge or information sufficient to form a belief respecting the allegation of the complaint that an affidavit showing good cause for the institution of the proceeding had been signed. As a matter of fact, such an affidavit, although sworn to July 31, 1953 as alleged in the complaint, was not filed in the cause until June 13, 1956. After discovery proceedings by the plaintiff in the form of requests for admissions, the case was tried, and the testimony of witnesses and that of the defendant was presented, with the result set forth in this Court's opinion hereinabove referred to. At no time prior to the present motion was the issue of plaintiff's right to maintain the action raised or adverted to by the defendant, either by way of motion addressed to the complaint or defense in his answer. The case was decided and judgment entered upon the merits, after plenary trial. Now, after the period within which an appeal might have been taken has long since expired, the defendant endeavors to attack the judgment entered against him by way of the present motion.

■ Rule 60(b) was not intended to provide relief for error on the part of the Court, Ackermann v. United States, 1950, 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207; Nachod, etc. Co., Inc., v. Automatic Signal Corp., D.C.Conn.1940, 32 F.Supp. 588; nor was the Rule intended to afford a substitute for an appeal. Morse-Starrett Products Co. v. Steccone, 9 Cir., 1953, 205 F.2d 244, 249. In its decision upon which the criticized judgment was entered, this Court discussed the requirement of § 1451(a) that an affidavit showing good cause be filed, and in that connection took cognizance of United States v. Zucca, 1956, 351 U.S. 91, 76 S.Ct. 671, 100 L.Ed. 964, and United States v. Lucchese, 2 Cir., 1957, 247 F.2d 123.

It will be recalled that in Lucchese, as in the instant case, no affidavit of good cause was filed with the complaint, but an affidavit, apparently drawn up on the date of the filing of the complaint, was actually filed some three years later. In the Lucchese case, however, in the District Court, 149 F.Supp. 952, the defendant moved to dismiss the complaint for failure to file the affidavit. The Government thereupon filed the affidavit and the District Judge denied the motion to dismiss on the ground that the filing of the affidavit after the filing of the complaint but before trial satisfied the statutory requirement. Thereafter Lucchese renewed his motion to dismiss and the motion was again denied. When the United States Supreme Court had decided Zucca, Lucchese moved the District Court to reargue his previous motions to dismiss, and the District Judge thereupon dismissed the complaint, construing Zucca as requiring the filing of the affidavit with the complaint. From the order of dismissal the Government appealed to the Second Circuit which, for the reasons stated in its decision in United States v. Matles, 2 Cir., 1957, 247 F.2d 378, reversed the District Court and held that there had been a sufficient compliance with the statute by the filing of the affidavit after the commencement of the action but before trial. The Second Circuit rejected the District Court's construction of the United States Supreme Court's opinion in Zucca.

When this Court decided the instant case, it relied upon the Second Circuit's interpretation of Zucca, as disclosed in Matles and Lucchese. The present parties raised no issue respecting the right of the plaintiff to maintain this action because of the failure to file the affidavit before or with the complaint. Since this Court's decision and the entry of judgment thereon, the United States Supreme Court has reversed the Second Circuit in the Lucchese and Matles cases (1958, 356 U.S. 256, 78 S.Ct. 713, 2 L.Ed.2d 741; 356 U.S. 256, 78 S.Ct. 712, 2 L.Ed.2d 741), and in both cases remanded to the

District Court with directions to dismiss the complaints. In a very brief per curiam opinion it was stated:

"An affidavit showing good cause is a prerequisite to the initiation of denaturalization proceedings. The affidavit must be filed with the complaint when the proceedings are instituted." 78 S.Ct. 713.

and United States v. Zucca, supra, was cited. It is the foregoing expression which has probably stimulated the defendant to bring the present motion.

Although the notice of this motion grounds it upon subdivision (4) of Rule 60(b), i. e., that "the judgment is void", the briefs and oral arguments of both parties have treated the motion as also invoking subdivision (6) of the Rule. We proceed to deal with each of these grounds.

 Were this case now initially before us upon defendant's motion to dismiss the complaint for, or upon his plea of, the failure to file the affidavit of good cause with or prior to the complaint, we would feel bound under Zucca, as most recently construed by the United States Supreme Court in Matles and Lucchese, to dismiss the action. Assuming that the issue had been properly presented to this Court, and that it should have followed Zucca as most recently construed, such error would be reviewable on appeal but would not render void the judgment entered thereon. A judgment is not rendered void because of error of a Court clothed with jurisdiction over the subject matter and the parties. Foltz v. St. Louis & S. F. Ry. Co., 8 Cir., 1894, 60 F. 316, 318. This Court's jurisdiction over the subject matter is conferred by 8 U.S.C.A. § 1421(a). It had jurisdiction over the parties by virtue of the personal service of summons upon the defendant. By failing to attack the complaint by motion or plea under Rule 12(b), defendant waived (Rule 12(h)) the availability as a defense of the claimed untimely filing of the affidavit of good cause. In Temple v. Lumber Mutual Casualty Ins. Co. of New York, 3 Cir., 1958, 250 F.2d 748, at page 752, Judge

McLaughlin, speaking for the Court of Appeals, epitomizes the rule of judgment finality in the following language:

"A determination by a competent court of a question of its own jurisdiction over the subject matter of an action before it is not subject to later attack except for fraud; * * *. In other words, decisions by competent courts with respect to questions of jurisdiction over subject matter are res judicata as to those items when one of the same parties or their privies attempts to re-litigate the questions."

The judgment against the defendant in this case is res judicata between the parties. Stoll v. Gottlieb, 1938, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104; American Surety Co. v. Baldwin, 1932, 287 U.S. 156, 53 S.Ct. 98, 77 L.Ed. 231; Baldwin v. Iowa State Traveling Men's Ass'n, 1930, 283 U.S. 522, 51 S.Ct. 517, 75 L.Ed. 1244; Loucke v. United States, D.C.S.D.N.Y.1957, 21 F.R.D. 305. There has been no showing or intimation of fraud herein.

In none of its relevant decisions has the Supreme Court treated the statutory requirement for the filing of an affidavit of good cause as a condition precedent to acquisition of jurisdiction by the court in proceedings under 8 U.S.C.A. § 1451. In Zucca, 351 U.S. at page 99, 76 S.Ct. at page 676, the Court held the affidavit "a procedural prerequisite to the maintenance of proceedings thereunder", but in 351 U.S. at page 100, 76 S.Ct. at page 677 characterized the filing of such affidavit "as a prerequisite to the initiation of such proceedings". The same Court in Matles, 356 U.S. 256, 78 S.Ct. 712, refers to the affidavit as "a prerequisite to the initiation of denaturalization proceedings." In United States v. Felt & Tarrant Co., 1931, 283 U.S. 269, 272–273, 51 S.Ct. 376, 377, 75 L.Ed. 1025, the Supreme Court reviewed on certiorari a judgment of the Court of Claims allowing a taxpayer recovery of income and excess profits taxes claimed to have been illegally exacted. The Government's sole objection to the recovery was

that the claim for refund filed by the taxpayer "as a prerequisite to suit" did not comply with the applicable statute. In reversing the Court of Claims, the Supreme Court, citing Tucker v. Alexander, 1927, 275 U.S. 228, 48 S.Ct. 45, 72 L.Ed. 253, pointed out that:

> "The filing of a claim or demand as a prerequisite to a suit to recover taxes paid is a familiar provision of the revenues laws, compliance with which may be insisted upon by the defendant, whether the collector or the United States. * * * Compliance may be dispensed with by waiver, as an administrative act, * * *; but it is not within the judicial province to read out of the statute the requirement of its words."

Because there was a waiver of this requirement in Tucker, the Court in that case reversed the District Court's dismissal of the action, and in 275 U.S. at page 231, 48 S.Ct. at page 46, Mr. Justice Stone, discussing the statutory prerequisite of a filed claim indicates, in the following language, that it is not jurisdictional:

> "Literal compliance with statutory requirements that a claim or appeal be filed with the Commissioner before suit is brought for a tax refund may be insisted upon by the defendant, whether the Collector or the United States. * * * The statute and the regulations must be read in the light of their purpose. They are devised, not as traps for the unwary, but for the convenience of government officials in passing upon claims for refund and in preparing for trial. Failure to observe them does not necessarily preclude recovery. If compliance is insisted upon, dismissal of the suit may be followed by a new claim for refund and another suit within the period of limitation. If the Commissioner is not deceived or misled by the failure to describe accurately the claim, as obviously

he was not here, it may be more convenient for the government, and decidedly in the interest of an orderly administrative procedure, that the claim should be disposed of upon its merits on a first trial without imposing upon government and taxpayer the necessity of further legal proceedings."

No suggestion has been made that any new evidence would be available to either party in the present case. Having gone to trial upon the merits in a case of which the Court had jurisdiction, the defendant is bound by the resulting judgment.

■■ The remaining ground urged by the defendant is not supported by the facts nor within the purview of applicable legal principles. The present action is a civil, not a criminal action. Ackermann v. United States, supra; Klapprott v. United States, 3 Cir., 1948, 166 F.2d 273, reversed on other grounds, 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266. Subdivision (6) of Rule 60(b) authorizes the trial court to relieve a party from a final judgment for "any other reason justifying relief from the operation of the judgment." It is obvious that the adjective "other" implies exclusion of the previously stated five grounds for the relief. No fraud has been shown or suggested. No barrier, similar to that which existed in Klapprott, supra, is to be found in the present case which could be deemed to have interfered with defendant's assertion of his right to insist that the statutory procedural prerequisite be complied with. In Ackermann, supra, the defendant also invoked subdivision (6) of Rule 60(b) and relied upon Klapprott as his authority. He claimed that his denaturalization was erroneous, that he did not appeal the judgment because of certain representations by the Alien Control Officer that he would be released at the end of the War and because of lack of funds. Distinguishing the Klapprott case as one of "extraordinary circumstances" the Court in Ackermann, 340

U.S. at page 198, 71 S.Ct. at page 211, refused to find justification under Rule 60(b) (6) because:

"Petitioner made a considered choice not to appeal, apparently because he did not feel that an appeal would prove to be worth what he thought was a required sacrifice of his home. His choice was a risk, but calculated and deliberate and such as follows a free choice. Petitioner cannot be relieved of such a choice because hindsight seems to indicate to him that his decision not to appeal was probably wrong * * *. There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from."

In the foregoing language is to be clearly discerned a recognition that the policy of the law is to protect the finality of judgments, not only for the benefit of the interests and rights of the litigants, but in the public interest in expeditious disposition of litigation. See, Collins v. City of Wichita, Kansas, 10 Cir., 1958, 254 F.2d 837; Elgin National Watch Co. v. Barrett, 5 Cir., 1954, 213 F.2d 776; Berryhill v. United States, 6 Cir., 1952, 199 F.2d 217; Ripperger v. A. C. Allyn & Co., Inc., 2 Cir., 1940, 113 F.2d 332; Foltz v. St. Louis & S. F. Ry. Co., supra; and Loucke v. United States, supra. The Court held in Elgin [213 F.2d 780], construing Rule 60(b) (6), that the mere fact that the judgment was erroneous was not "any other reason justifying relief"; and in Berryhill a change in the judicial view of applicable law, expressed after the judgment had been entered, was likewise considered an insufficient basis for vacating the judgment.

 I conclude that the judgment here sought to be vacated is not void, and that the defendant has failed to show any basis warranting relief under Rule 60(b).

The motion is accordingly denied, and an order may be presented in conformity with this determination.