**BIOTRONIK MESS–und THERAPIEG-ERAETE GmbH & CO., Petitioner,**

v.

**MEDFORD MEDICAL INSTRUMENT COMPANY, Respondent.**

Civ. A. No. 75–1042.

United States District Court,
D. New Jersey.

May 12, 1976.

Waldron Kraemer, Kasen & Kraemer, Newark, N. J., for petitioner.

Peter R. Pinney, James D. Fornari, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for respondent.

## OPINION

BROTMAN, District Judge.

This is an action to enforce an arbitration award entered by the International Chamber of Commerce Court of Arbitration at Berne, Switzerland, on December 30, 1974. The petitioner, Biotronik Mess-und Therapiegeraete GmbH & Co., (hereafter "Biotronik") is a West German manufacturer of implantable cardiac pacemakers and accessories. The respondent, Medford Medical Instrument Co. (hereafter "Medford"), a New Jersey corporation with its principal place of business in Medford, New Jersey, served as Biotronik's American distributor from December 1969 until January 1972.

The action arises under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, [1970] 3 U.S.T. 2517, T.I.A.S. No. 6997,[1] and 9 U.S.C. § 201.[2] The application to confirm the award is brought pursuant to 9 U.S.C. § 207,[3] and is before the court by motion.[4]

---

1. The text of the Convention appears following 9 U.S.C.A. § 201 (Supp.1976).

2. 9 U.S.C. § 201 provides:
 The Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, shall be enforced in United States courts in accordance with this chapter.

3. 9 U.S.C. § 207 provides:
 Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration. The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention.

4. In domestic arbitration 9 U.S.C. § 6 provides that applications for relief under the United States Arbitration Act shall be made by motion. *See World Brilliance Corp. v. Bethlehem Steel Co.,* 342 F.2d 362, 365–66 (2nd Cir. 1965). This provision has been incorporated into proceedings under 9 U.S.C. § 201 *et seq.* through the provision of 9 U.S.C. § 208. *See* note 10, *infra.*

Jurisdiction of the court is conferred by 9 U.S.C. § 203 [5] and 28 U.S.C. § 1331.

*Facts*

Medford's distributorship arrangement consisted of two written agreements. In the First Agreement, executed on December 20, 1969, Biotronik granted Medford the exclusive right to market its products in the United States until February 1, 1971. On January 16, 1971, the parties negotiated a second exclusive-distributorship agreement that was to run for a period of twelve months beginning February 1, 1971. In October of 1971, Biotronik exercised its right to terminate the Second Agreement at the end of one year.[6] Biotronik subsequently appointed another firm, Concept Inc., to be its new American distributor.

Six months later, in June, 1972, a dispute arose over several shipments of products that Biotronik had made to Medford immediately prior to the termination of the Second Agreement. Biotronik demanded payment for four shipments of goods in the amount of $65,403.60. Medford did not deny its liability for the shipments, but by letter dated July 17, 1972 claimed to possess breach-of-contract claims arising out of alleged oral promises by Biotronik to renew Medford's distributorship, and other grounds. Medford proposed a mutual renunciation of claims, which Biotronik rejected. Opinion of the Arbitrators ¶¶ 3, 4.[6a]

The Second Agreement contained the following provision for the resolution of such disputes:

13. In the event of any controversy or claim arising out of or related to any provision of this agreement, or the breach thereof, the parties shall attempt to reach an amicable settlement. If they fail to agree, the dispute shall be settled under the Rules of Conciliation and Arbitration of the International Chamber of Commerce, Paris, France, by three arbitrators appointed in accordance with the laws then prevailing. The arbitration shall take place in Berne, Switzerland. German material law (Materielles Recht) and German law of procedure (Prozessrecht) must be applicated [sic]. The award shall be final and binding and may be entered in any court having jurisdiction or application may be made to any court for judicial acceptance of the award or an order for enforcement, as the case may be.

When the parties were unable to reach a settlement, Biotronik, on February 14, 1973, submitted the matter to arbitration pursuant to the above contractual provision. Medford apparently had notice of the pendency of the arbitration, since it submitted to the panel a copy of its July 17, 1972 letter which served as a denial of Biotronik's claims. Opinion of the Arbitrators ¶ 5. In any event, Medford pointedly does not attack the adequacy of notice in this court.[7] Biotronik ultimately prevailed in the arbitration and was awarded the sum of $56,306.78 together with interest and costs.[8]

---

**5.** 9 U.S.C. § 203 provides:

An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States . . shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy.

**6.** Article 2 of the January 16, 1971 Agreement provided:

This contract will last for a period of 12 (twelve) months and will be renewed for another year, unless either party gives the other notice 3 (three) months in advance of the date on wich [sic] it wants to terminate the agreement.

**6a.** Biotronic appended to its complaint a certified copy and certified translation of the decision of the arbitration panel.

**7.** Despite the arbitrators' reference to a submission by Medford, in an affidavit Medford's President affirms that "[a]t no time did Medford appear or submit evidence of a documentary nature or otherwise to the Court of Arbitration." Affidavit of R. Frederick Neilsen ¶ 9. Nevertheless, a thorough examination of Mr. Neilsen's affidavit fails to disclose any statement suggesting that his company lacked knowledge of the arbitration proceeding, and, as is stated in the text, Medford does not so argue in this court.

**8.** Prior to the initiation of arbitration Medford returned various instruments to Biotronik's

### The Third Agreement

· Medford's opposition to the enforcement of the arbitration award is based on a document that it characterizes as the "Third Agreement." This agreement was purportedly executed on January 31, 1972, one day prior to the termination of Medford's distributorship. Written in the handwriting of Medford's president on a sheet of its stationery, the Third Agreement reads in its entirety: ·

Stating that a 5% Commission is to be paid to Medford Medical Instrument Co. on the total sales of Biotronik Pacemakers in the United States for the first year 1972 and a 3% Commission will be paid for the second year 1973. This is to Medford Medical for helping Concept get started in the U. S. market.

According to Medford, this agreement entitled it to commissions on the total sales of Biotronik's pacemakers in the United States for two years after the termination of the distributorship. Medford further alleges that the parties agreed to credit the commissions against any outstanding sums owed by Medford to Biotronik. Medford maintains that it never owed Biotronik the amount awarded in the arbitration proceeding because the commissions, which were never paid, either offset or exceeded Biotronik's original claim.

### Background of the Convention

In 1958, some twenty-six of the forty-five member nations adopted the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, *opened for signature* June 10, 1958, 330 U.N.T.S. 38 (hereafter "the Convention"). The Convention superseded two earlier multilateral treaties adopted by the League of Nations, the Geneva Protocol on Arbitration Clauses, *opened for signature* September 24, 1923, 27 L.N.T.S. 157, and the Geneva Convention on the Execution of Foreign Arbitral Awards, *opened for signature* September 26, 1927, 92 L.N.T.S. 301.

The basic thrust of the Convention was to liberalize the procedures for enforcing foreign arbitral awards. The 1927 Geneva Convention had placed the burden of proof on the party seeking enforcement of the award and did not limit the defenses available to the party opposing enforcement. The 1958 Convention shifted the burden of proof in an enforcement action to the party opposing enforcement and limited its defenses to the seven set forth in Article V.[9]

---

new distributor, Concept, Inc., and the parties settled upon crediting Medford in the amount of $9,096.82. Opinion of the Arbitrators ¶ 3(a). The sum awarded Biotronik thus represented the entire amount of its claim. ·

9. Article V
1. Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:
(a) The parties to the agreement referred to in article II were, under the law applicable to them, under some incapacity, or the said agreement is not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made; or
(b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case; or
(c) The award deals with a difference not contemplated by or not falling within the terms of the submission to arbitration, or it contains decisions on matters beyond the scope of the submission to arbitration, provided that, if the decision on matters submitted to arbitration can be separated from those not so submitted, that part of the award which contains decisions on matters · submitted to arbitration may be recognized and enforced; or
(d) The composition of the arbitral authority or the arbitral procedure was not in accordance with the agreement of the parties, or, failing such agreement, was not in accordance with the law of the country where the arbitration took place; or
(e) The award has not yet become binding on the parties, or has been set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made.
2. Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that:
(a) The subject matter of the difference is not capable of settlement by arbitration under the law of that country; or

See *Parsons & Whittemore Overseas Co. v. Societe Generale De L'Industrie Du Papier (RAKTA),* 508 F.2d 969, 973 (2nd Cir. 1974); Contini, *International Commercial Arbitration,* 8 Am.J.Comp.L. 283, 299 (1959).

The United States was not a signatory to the Convention when it was concluded in 1958, but this country did ratify it in 1970. [1970] 3 U.S.T. 2517, T.I.A.S. No. 6997. Congress enacted Chapter 2 to Title 9, the United States Code, 9 U.S.C. §§ 201–208, to implement our obligations under the Convention. The provisions of Chapter 1 of Title 9, the United States Arbitration Act, 9 U.S.C. § 1 *et seq.,* were made applicable to Chapter 2 to the extent that they do not conflict with the Convention. 9 U.S.C. § 208.[10]

### Medford's Defenses, Part I

· Medford's first two defenses consist of alternative legal theories, both of which are based upon Biotronik's failure to offer any evidence concerning the Third Agreement to the arbitration panel. Firstly, Medford argues that Biotronik's non-disclosure renders the award "procured by . . . fraud" within the meaning of § 10(a) of the United States Arbitration Act, 9 U.S.C. § 10(a),[11] and that fraud, even though not one of the defenses enumerated in Article V of the Convention, became a defense through the incorporation provision of 9

U.S.C. § 208. Secondly, Medford argues that fraud, even if not available as a defense through the operation of § 208, constitutes a defense within the "public policy" defense of Article V(2)(b) of the Convention.[12] For these reasons Medford urges this court to stay the enforcement of the award and order another arbitration proceeding pursuant to 9 U.S.C. § 3.[13]

■ It is apparent that both of Medford's defenses turn upon whether there is an adequate basis to hold that the award was procured through fraud. Medford contends that Biotronik, when it appeared alone at the arbitration hearing, knowingly withheld evidence concerning the Third Agreement and engaged in a calculated attempt to mislead the arbitrators. Biotronik responds by arguing that, in an adversary system of justice, the failure of one side to prove the other side's case cannot constitute a fraud. On this record, the court concurs with Biotronik, and is unable to conclude that Biotronik's conduct should be denominated fraud within § 10(a).

Most courts have held that an arbitration award is not fraudulently obtained within the meaning of § 10(a) of the United States Arbitration Act when the protesting party had an opportunity to rebut his opponent's claims at the arbitration hearing. *E. g., Kirschner v. West Co.,* 247 F.Supp. 550

(b) The recognition or enforcement of the award would be contrary to the public policy of that country.

**10.** 9 U.S.C. § 208 provides:

Chapter 1 applies to actions and proceedings brought under this chapter to the extent that chapter is not in conflict with this chapter or the Convention as ratified by the United States.

**11.** 9 U.S.C. § 10(a) provides:

[T]he United States court in and for the district wherein the award was made may make an order ·vacating the award upon the application of any party to the arbitration—
(a) Where the award was procured by corruption, fraud, or undue means.

The court notes in passing that no United States judicial district embraces Berne, Switzerland, the site at which the arbitral award was entered. However, the resolution made by the text obviates further consideration of the point.

**12.** See note 9 *supra.*

**13.** 9 U.S.C. § 3 states:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

Medford urges that a second arbitration could encompass its claims under the Third Agreement; Biotronik replies that 9 U.S.C. § 3 is inapplicable since the Third Agreement contains no arbitration clause. In view of the disposition made herein, the court need not resolve this question.

(E.D.Pa.), *aff'd per curiam,* 353 F.2d 537 (3rd Cir. 1965), *cert. denied,* 383 U.S. 945, 86 S.Ct. 1202, 16 L.Ed.2d 208 (1966); *Karppinen v. Karl Kiefer Machine Co.,* 187 F.2d 32 (2nd Cir. 1951). *Karppinen* was one of the earliest discussions of this issue; there the party resisting enforcement alleged that the award had been obtained through the knowing use of perjured testimony. The court responded to this argument by saying:

> We note only in passing that if perjury is "fraud" within the meaning of the statute then, since it necessarily raises issues of credibility which have already been before the arbitrators once, the party relying on it must first show that he could not have discovered it during the arbitration, else he should have invoked it as a defense at that time. 187 F.2d at 35.

Similar reasoning is applicable here. If, in fact, Biotronik knowingly concealed evidence—that is, the Third Agreement—from the arbitration panel, such misrepresentation would be analogous to perjured testimony. While fraud may arise from an omission of material fact as well as an affirmative statement, *Gibbons v. Brandt,* 170 F.2d 385, 391 (7th Cir. 1948), *cert. denied,* 336 U.S. 910, 69 S.Ct. 511, 93 L.Ed. 1074 (1949); *Northwest Airlines, Inc. v. Air Line Pilots Ass'n, International,* 385 F.Supp. 634, 637 (D.D.C.1974), *Karppinen* suggests that the focus under § 10(a) is upon whether the protesting party had an opportunity to discover and reveal the purported fraud at the arbitration hearing. Since Medford was certainly aware of the pendency of the arbitration proceedings, see note 7, *supra,* it was capable of invoking fraud as a defense at that time.

 *Catz American Co. v. Pearl Grange Fruit Exchange, Inc.,* 292 F.Supp. 549 (S.D.N.Y.1968) presents another analogous situation.[14] In that case the plaintiff offered the testimony of two alleged brokers in the disputed transaction. The arbitration panel, however, never called for their production. The defendant claimed that the arbitrator's failure to call these witnesses was sufficient to vacate the award, even though the defendant had never attempted to compel the witnesses to testify. The court rejected the defendant's theory:

> It does not appear, on the other hand, that Pearl requested Catz to produce Imperial. If Pearl believed Imperial's testimony to be relevant or essential, it could have requested the arbitrators to summon Imperial by exercising their powers pursuant to 9 U.S.C. § 7, which it did not do, with the result that its real objection now is that Catz should have produced Imperial regardless of the arbitrators' decision in the matter. 292 F.Supp. at 553.

Medford's complaint is the same; it urges fraud when its real objection is that Biotronik should have presented evidence favorable to Medford's case. The court's holding in *Catz,* that a party cannot complain about the nonproduction of evidence when it failed to offer such evidence itself, is applicable with equal force in this case.[15]

---

14. *Catz* was decided under § 10(c) which provides:

 > [T]he United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration—
 > (c) Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced.

 Although § 10(c) is directed to the misconduct of the arbitrators while § 10(a) is directed to the misconduct of a party, under neither section will an arbitration award be vacated when a party's real complaint is the failure of the other side to present evidence favorable to its case, as *Catz* itself demonstrates.

15. Although the cases under 9 U.S.C. § 10(a) are persuasive, no case seems to have considered the precise question presented here. However, further confirmation in the case law that the instant facts do not constitute fraud may be obtained from cases arising under Federal Rule of Civil Procedure 60(b). Rule 60(b) provides in pertinent part:

 > On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:

■ Policy considerations similarly point in the same direction. In *Karppinen, supra,* Judge Augustus N. Hand wrote that

It goes without saying that there should be great hesitation in upsetting an arbitration award. The award . . . must stand unless it is made abundantly clear that it was obtained through "corruption, fraud or undue means." 187 F.2d at 34 (footnote omitted).

More recently, the Third Circuit observed that the fact that an arbitration award may be vacated upon a showing of fraud

does not obliterate the hesitation with which courts should view efforts to re-examine awards. [Citing *Karppinen.*] To do otherwise would defeat the primary advantages of speed and finality which led to the development of arbitration in business disputes. . . .. *Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.,* 397 F.2d 594, 598 (3rd Cir.) (footnote omitted), *cert. denied,* 393 U.S. 954, 89 S.Ct. 378, 21 L.Ed.2d 365 (1968).

*See generally* Annotation, *Vacation of Arbitration Awards,* 20 A.L.R. Fed. 295 §§ 2(b), 5 (1974). The stated advantages of arbitration apply equally to the international context, *see, e. g.,* Contini, *International Commerical Arbitration,* 8 Am.J.Comp.L. 283 (1959), and so the court will likewise require a convincing showing before upsetting an international arbitration award.

Furthermore, in international commercial arbitration considerations of international reciprocity furnish an additional reason to construe defenses narrowly. The Second Circuit in *Parsons & Whittemore, supra,* 508 F.2d at 973, noted the "pro-enforcement bias informing the Convention," and, first addressing the public policy defense in Article V(2)(b) of the Convention, concluded that

considerations of reciprocity—considerations given express recognition in the Convention itself—counsel courts to invoke the public policy defense with caution lest foreign courts frequently accept it as a defense to enforcement of arbitral awards rendered in the United States. *Id.* at 973–74 (footnote omitted).

*See also Scherk v. Alberto-Culver Co.,* 417 U.S. 506, 516–17, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974). The court in *Parsons & Whittemore* went on to hold that other defenses should be narrowly construed for the same reasons, 508 F.2d at 976, and so Medford's novel defense here should be likewise narrowly construed.

It is evident that Biotronik merely presented its best theory for recovery before the arbitration panel; there is no allegation, nor could there be, that its actions prevented Medford from presenting its

---

(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party.

Rule 60(b) serves the same function as § 10(a): both permit the reopening of an otherwise final decision upon a demonstration of fraud in the proceedings. And the comparison between § 10(a) and Rule 60(b) is sound, since, just as § 10(a) counteracts a strong policy favoring the finality of arbitration awards, *see Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co.,* 397 F.2d 594, 598 (3rd Cir.), *cert. denied,* 393 U.S. 954, 89 S.Ct. 378, 21 L.Ed.2d 365 (1968), so Rule 60(b) opposes the strong policy favoring the finality of judgments. *See United States v. Failla,* 164 F.Supp. 307, 315 (D.N.J.1958).

As a general rule, under Rule 60(b) as under § 10(a), in order to justify setting aside a final judgment on the grounds of fraud "it must appear that such fraud charged really prevented the party complaining from making a full and fair defense." *Toledo Scale Co. v. Computing Scale Co.,* 261 U.S. 399, 421, 43 S.Ct. 458, 464, 67 L.Ed. 719 (1923); *Keys v. Dunbar,* 405 F.2d 955, 957–58 (9th Cir.), *cert. denied,* 396 U.S. 880, 90 S.Ct. 158, 24 L.Ed.2d 138 (1969). And in language that embraces the precise situation at hand, the court in *United States v. International Telephone & Telegraph Corp.,* 349 F.Supp. 22, 29 (D.Conn.1972), speaking of the Rule 60(b) situation, stated:

[O]nly the most egregious misconduct, such as bribery of a judge or members of a jury, or the fabrication of evidence by a party in which an attorney is implicated, will constitute a fraud on the court. [Citations omitted]. Less egregious misconduct, such as nondisclosure to the court of facts allegedly pertinent to the matter before it, will not ordinarily rise to the level of fraud on the court. See *Kupferman v. Consolidated Research & Mfg. Co.,* . . . 459 F.2d 1072 [(2nd Cir. 1972)]; [further citation omitted].

case. If the true state of affairs was contrary to Biotronik's version, Medford, which had contradictory evidence in its possession, should have come forward with it. The court determines, therefore, that the facts cannot sustain Medford's defense of fraud.

Since the court fails to find fraud in the procurement of the arbitration award, the court does not reach, and therefore expresses no opinion upon, Medford's contention that the defense of fraud within 9 U.S.C. § 10(a) may be asserted in an enforcement action under the Convention by reason of 9 U.S.C. § 208. *See Parsons & Whittemore, supra,* 508 F.2d at 977.

Medford's alternative fraud defense is based on the public policy defense of Article V(2)(b) of the Convention which states:

2. Recognition and enforcement of an arbitral award may also be refused if the competent authority in the country where recognition and enforcement is sought finds that:

. . . . .

(b) The recognition or enforcement of the award would be contrary to the public policy of that country.

Medford reasons that since fraudulent procurement of an arbitration award would be grounds for vacating an award in domestic arbitration under § 10(a), this is tantamount to a declaration that the enforcement of any fraudulently obtained award is contrary to the public policy of the United States. As such, Medford argues, enforcement should be denied through Article V(2)(b).

Because Medford has been unable to establish fraud under § 10(a), the public policy defense of Article V of the Convention is *a fortiori* inapplicable. For the reasons reviewed *supra,* the Second Circuit has held with respect to the public policy defense that "[e]nforcement of foreign arbitral awards may be denied on this basis only where enforcement would violate the forum state's most basic notions of morality and justice." *Parsons & Whittemore, supra,* 508 F.2d at 974 (2nd Cir. 1974); *Fotochrome, Inc. v. Copal Co., Ltd.,* 517 F.2d 512, 516 (2nd Cir. 1975). Since the court did not find

fraud within § 10(a), it is distinctly incapable of finding that the award violated our "most basic notions of morality and justice."

### Medford's Defenses, Part II

Medford also argues that enforcement should be denied under Article V(1)(b) of the Convention which provides:

1. Recognition and enforcement of the award may be refused, at the request of the party against whom it is invoked, only if that party furnishes to the competent authority where the recognition and enforcement is sought, proof that:

. . . . .

(b) The party against whom the award is invoked was not given proper notice of the appointment of the arbitrator or of the arbitration proceedings or was otherwise unable to present his case.

Medford does not contend that it received inadequate notice or was otherwise prevented from participating in the proceedings. Rather, it argues that it was "unable to present its case" within the meaning of Article V(1)(b) because its rights and liabilities did not mature, and could not be calculated, under the Third Agreement, until that agreement expired at the end of 1973.

■ This theory misconceives the thrust of the exception. "This provision essentially sanctions the application of the forum state's standards of due process." *Parsons & Whittemore, supra,* 508 F.2d at 975. The primary elements of due process are notice of the proceedings and the opportunity to be heard thereon. *Fuentes v. Shevin,* 407 U.S. 67, 80, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); *Goldberg v. Kelly,* 397 U.S. 254, 267, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969).

■ Medford's due process rights under American law were not infringed under the facts of this case. It received notice of the proceedings; it offers no explanation of its failure to participate. If, as Medford alleges, the Third Agreement prevented its

rights from maturing until 1973, it had every opportunity to offer that document and any other extrinsic evidence in support of its position. If Biotronik's initiation of arbitration was untimely, Medford easily could have made this fact known to the arbitration panel. Neither the actions of Biotronik nor the actions of the panel had any effect upon Medford's ability to present its case.

Accordingly, the motion to confirm the award will be granted. Counsel for petitioner to submit an appropriate order.