Thomas GRISBAUM, Plaintiff-Appellee,

v.

AMALGAMATED MEAT CUTTERS & TANNERY WORKERS UNION, LOCAL NO. 73, Defendant and Third-Party Plaintiff,

v.

The KOHL CORPORATION, Defendant and Third-Party Defendant-Appellant.

No. 82–1916.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 26, 1982.

Decided Dec. 23, 1982.

Thomas L. Shriner, Jr., Foley & Lardner, Milwaukee, Wis., for defendant and third-party defendant-appellant.

James A. Baxter, Schellinger & Doyle, S.C., Milwaukee, Wis., for plaintiff-appellee.

Before PELL, Circuit Judge, SWYGERT, Senior Circuit Judge, and MAROVITZ,* Senior District Judge.

PELL, Circuit Judge.

Appellant Kohl Corporation (Kohl) appeals from a judgment of the district court vacating an arbitrator's award in favor of Kohl because of what the court termed the company's fraud at the arbitration hearing. The court held that by not calling one of its attorneys to testify about a telephone conversation, Kohl had deceitfully withheld important information from the arbitrator and thereby tainted the proceeding.

Kohl raises five challenges to the district court's decision. First, it says that there was no fraud because the arbitrator had all of the facts before him, including an uncontradicted account of the telephone conversation. Second, it says that even if there was fraud, appellee's action, brought under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, was barred by the statute of limitations. Third, it says that the posttrial amendment of the complaint to make Kohl a party defendant was improper. Fourth, it says that in vacating the award the district court should have remanded the entire case to the arbitrator, not just the issue of the appropriate relief. Fifth, it says that the award of attorney's fees was improper.

## I. FACTS

Appellee Thomas Grisbaum was employed by Kohl as a meat cutter and was a member of the Amalgamated Meat Cutters & Tannery Workers Union (the Union). On June 17, 1975, he suffered a disabling back injury that rendered him unable to work for more than a year. On December 30, 1976, the Union notified Kohl that Grisbaum would be able to return to work on January 3, 1977.

Kohl, asserting that Grisbaum's injury was not work related, responded that it would not rehire Grisbaum because, under the collective bargaining agreement, the company was not required to reinstate a worker who had not worked for more than a year because of a non-work-related injury. In a letter to the Union dated January 17, the company affirmed that its decision was final.

The collective bargaining agreement provided that the Union had twenty-four hours in which to request that a panel of arbitrators hear a grievance. Instead of responding on January 18, the Union requested arbitration on January 28. Citing this delay, Kohl refused to agree to submit the grievance to arbitration. The company did agree, however, to arbitrate whether the Union could institute Grisbaum's grievance despite its failure to meet the twenty-four-hour deadline.

At the arbitration hearing, the parties agreed that the issues to be determined were whether the grievance was arbitrable despite the Union's failure to meet the deadline and, if so, whether Grisbaum was estopped from asserting his claim for reinstatement or back pay. They also agreed that if the arbitrator decided against Kohl on both of those issues, they would be bound by the determination of the Wisconsin Division of Worker's Compensation as to whether Grisbaum's back injury was occupational. On October 4, 1977, the agency ruled that the injury was occupational, but,

because the arbitrator ruled in Kohl's favor on the time bar issue, this ruling had no effect.

At the May 13, 1977, arbitration hearing, the Union claimed that Kohl's attorney Barton Peck had telephoned Gordon Loehr, the Union's business representative, on January 8, and waived strict compliance with the time limits of the collective bargaining agreement. The Union asserted that because of this telephone conversation it did not respond to Kohl's January 17 letter within twenty-four hours. Kohl did not deny that the conversation occurred, but asserted that it had wanted to expedite the arbitration proceedings rather than delay, and pointed to the language of the January 17 letter indicating a desire to hurry.

Only Loehr testified about the conversation at the hearing; neither side called Peck to testify, nor did he volunteer his version of the conversation.[1] On June 30, 1977, the arbitrator ruled that the Union's failure to meet the twenty-four-hour deadline barred it from instituting Grisbaum's grievance. The arbitrator said that the letter of January 17 was "[e]ntirely inconsistent" with the Union's claim that Peck had waived the time limits in the January 8 telephone conversation.

On January 5, 1979, Grisbaum filed an action in a Wisconsin county circuit court against the Union under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185. On January 18, the Union removed the action to the district court and, on July 20, the court granted the Union leave to file a third-party complaint against Kohl. The trial was held on October 27, 1979; both Peck and Loehr testified about the telephone conversation and substantially agreed as to what was discussed. Following the trial, Grisbaum moved pursuant to Rule 15(b) of the Federal Rules of Civil Procedure to add Kohl as a party defendant and to amend his pleadings to assert his claim that the arbitrator's award was not binding on the parties because of Kohl's fraud.

On February 10, 1982, the district court vacated the arbitrator's decision, remanded the case to him to determine the relief to which Grisbaum was entitled, and granted the motions to add Kohl as a party defendant and to amend the complaint. The court dismissed Grisbaum's complaint against the Union and the Union's complaint against Kohl. On April 14, the court awarded attorney's fees to Grisbaum.

Judge Reynolds ruled that the arbitration hearing was "tainted with deceit" because Kohl had not called Peck to testify that, as Loehr claimed, he had made the telephone call and told him to "forget all the time limits." The court said that "[s]uch conduct was deceitful and affected the very integrity of the arbitral process." In holding plaintiff's section 301 action not barred by the statute of limitations, the court said that Kohl had concealed the facts about the waiver by disputing at the hearing the Union's claim that the company had waived the time limits and by introducing the January 17 letter, on which the arbitrator relied.

## II. FRAUD

■ The law is clear that courts have little discretion to overturn an arbitrator's decision on the merits. "The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards." *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960). *Accord, Milwaukee Typographical Union No. 23 v. Newspapers, Inc.,* 639 F.2d 386, 392 (7th Cir.1981), *cert. denied,* 454 U.S. 838, 102 S.Ct. 144, 70 L.Ed.2d 119; *Amoco Oil Co. v. Oil, Chemical & Atomic Workers International Union,* 548 F.2d 1288, 1293–94 (7th Cir.1977), *cert. denied,* 431 U.S. 905, 97 S.Ct. 1697, 52 L.Ed.2d 389.

---

1. No transcript of this hearing exists.

■ A court may vacate a labor arbitration award, however, if the arbitration was tainted by fraud. *Cannon v. Consolidated Freightways Corp.,* 524 F.2d 290, 295 (7th Cir.1975). The issue in this case is narrow and defined: did Kohl's conduct in not calling Peck to testify about the telephone conversation constitute fraud such that the arbitration award could be vacated?

■ We hold that the district court erred in concluding that Kohl committed fraud at the arbitration hearing. Even though the company failed to call Peck to testify, the arbitrator had all of the facts necessary to make an informed decision. Union witness Gordon Loehr testified about the conversation and said that he interpreted Peck's remarks to mean that Kohl was waiving the time limits under the collective bargaining agreement. There was no more evidence to be revealed. All that Peck's testimony would have done would have been to confirm Loehr's testimony, subject to his differing interpretation of what he meant when he said "forget all the time limits." [2] Furthermore, Kohl never denied that the conversation between Peck and Loehr occurred, so there was no active attempt to mislead.

The case would be different if Loehr had been unavailable to testify and neither Peck nor Kohl brought the conversation to the arbitrator's attention. In such a case, the arbitrator would not have had the information necessary to make an informed decision and Kohl might well have had a duty to bring it to his attention. In the actual case, however, the evidence that Kohl allegedly concealed already had been revealed by the Union. Kohl was not under an obligation to help the Union's case further by putting Peck on the stand. *See Biotronik Mess-und Therapiegeraete GmbH v. Medford Medical Instrument Co.,* 415 F.Supp. 133, 137–38 & 138 n. 15 (D.N.J.1976).

■ The district court further concluded that Kohl "prevented the plaintiff from obtaining the knowledge necessary to institute a § 301 action against Kohl" by its actions in (1) disputing at the arbitration hearing the Union's position that Kohl had waived the time limits, and (2) introducing into evidence the January 17, 1977 letter, which the arbitrator held was inconsistent with the alleged telephone waiver.[3] The district court seems to have believed that the waiver was so obvious that it was fraud for Kohl to dispute it.

We disagree. Kohl was entitled to attempt to persuade the arbitrator, as it tries to persuade us, that it never meant to waive the time limits, but rather that it had always sought to expedite the arbitration. Although one may disagree with Kohl's claim, it was not frivolous to assert it and certainly not fraudulent because there was some evidence in the record to support the position. For example, Kohl introduced a letter at the arbitration hearing from Peck to a Union lawyer, dated January 4, 1977, in which Peck states that "we welcome an arbitration of the dispute and ask that the matter be resolved as quickly as possible." To support its position further, Kohl properly introduced the January 17 letter, which the arbitrator found dispositive. The arbi-

---

**2.** At the trial before the district court, Peck testified as follows about the telephone conversation:

> Mr. Baxter: What specifically did you say?
> Mr. Peck: The telephone call originated with myself. I phoned Mr. Loehr because of a concern that we had with the issue of whether or not to take Mr. Grisbaum back. We had a problem with the theory of estoppel. He had not made any effort to indicate physically that he had a compensable injury. I called Mr. Loehr, I explained our position to him. I told him that as far as the company is concerned, forget the time limits of the contract, forget all the steps of the contract, and

> I told him that, Gordy, as far as we are concerned, this matter can go to arbitration now. And I identified the name of an arbitrator, Herman Rauk, who could resolve the dispute. And that is the essence of my recollection as to what was said.
> Mr. Baxter: Said forget all the steps in the contract?
> Mr. Peck: That is correct.
> Mr. Baxter: Forget all the time limits in the contract?
> Mr. Peck: Forget all the time limits.

**3.** We note that the letter was introduced as a *joint* exhibit.

trator may well have concluded that, even if the telephone conversation were as Loehr testified, the letters of January 4 and 17 made it clear that Kohl did not intend to waive the time limits. We cannot agree with the district court that Kohl was guilty of fraud in trying to present its case.

 We emphasize that a court should not attempt to overturn an arbitration award by finding that a party was guilty of fraud simply because the court disagrees with the arbitrator's decision. It appears to us that the district court was doing just that in holding that fraud was present here, even though Kohl concealed nothing that the Union or Grisbaum did not know and even though the arbitrator had all the facts before him. The seriousness of the concept of fraud should not be diminished by applying it to situations that do not comport with the normal understanding of the term.

We recognize that the plaintiff's plight here presents a sympathetic case for the court to have substituted its judgment for that of the arbitrator: Grisbaum's injury was found to be work related and therefore he should have been awarded back pay for Kohl's refusal to take him back; yet this grievance was barred, through no fault of his own, because of the arbitrator's questionable ruling that the Union missed the deadline for asking for arbitration of the grievance. Despite the hardship in some cases, this is the inevitable and accepted consequence of the federal policy of making arbitrators' decisions virtually unreviewable—some wrong decisions simply will not be corrected. "[T]he question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 599, 80 S.Ct. 1358, 1362, 4 L.Ed.2d 1424 (1960).

4. In light of our holding that Kohl committed no fraud at the arbitration hearing, we need not reach the other issues raised on appeal.

## CONCLUSION

The judgment of the district court vacating the arbitrator's award in favor of appellant is reversed.[4]